## Clement, Appellant, *v.* United States Pipe Line Company.

*Negligence—Pipe line companies—Location of pipe line—Depth —Act of June 2, 1883, P. L. 61—Construction—Steam shovel—Collision with pipe line—Liability of pipe line company.*

1. The Act of June 2, 1883, P. L. 61, requiring oil pipe line companies to bury their pipes at least twenty-four inches below the surface, was intended to apply only in cases where the right to lay the pipes is acquired adversely under condemnation proceedings, and has no application where the right is acquired by purchase from the owner.

2. An oil pipe line company acquired the right to locate a pipe line through a farm by purchase; the pipe line was placed at a distance of sixteen inches below the surface of the soil; a subsequent purchaser of the land which had knowledge of the location of the pipe line engaged a contractor to erect a coke oven on the property. The steam shovel of a subcontractor who was excavating for the contractor, collided with the pipe line, and was destroyed. In an action by the subcontractor against the pipe line company for the loss of the steam shovel, there was no evidence that the defendant had notice that the land was to be used for other than agricultural purposes, or any evidence to charge the defendant with the duty of marking the route of the pipe line. The referee to whom the case was referred, found in favor of defendant, and judgment was entered upon the report of the referee. *Held,* no error.

Argued Jan. 7, 1916.  Appeal, No. 308, Jan. T., 1915, by plaintiff, from final order of C. P. No. 5, Philadelphia Co., June T., 1913, No. 3871, dismissing exceptions to report of referee, in case of Frank H. Clement v. United States Pipe Line Company.  Before MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ.  Affirmed.

Trespass to recover damages for the loss of a steam shovel.

Exceptions to the report of Owen J. Roberts, Esq., referee.   Before STAAKE, J.

The opinion of the Supreme Court states the facts.

The court dismissed exceptions to the report of the referee, and entered judgment for defendant thereon. Plaintiff appealed.

*Errors assigned* were in dismissing the exceptions.

*Lester B. Johnson,* for appellant.—Defendant company is liable because of its failure to bury its pipe line twenty-four inches deep, as required by the Act of June 2, 1883, P. L. 61; Union Pacific Ry. Co. v. McDonald, 152 U. S. 262; Forster v. Rogers Bros., 247 Pa. 54; Herron v. Pittsburgh, 204 Pa. 509; Lewis v. Wood, 247 Pa. 545; Drake v. Fenton, 237 Pa. 8; Krutlies v. Bull Head Coal Co., 249 Pa. 162.

Under the Act of June 2, 1883, P. L. 61, the defendant company is an insurer against damages resulting from the breakage of their pipes: Hauck v. Tidewater Pipe Line Co., Ltd., 153 Pa. 366; Penna. Coal Co. v. Sanderson, 113 Pa. 126; Chester National Bank v. Southern Pipe Line Co., 40 Pa. Superior Ct. 87.

The failure of the defendant to maintain any mark, monument or notice of the existence of its line or to give actual notice of its existence to the plaintiff who was operating in its vicinity was negligence at common law : Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540.

*Eugene Mackey,* with him *F. Corlies Morgan* and *Henry W. Goddard,* for appellee.

OPINION BY MR. JUSTICE STEWART, March 27, 1916:

The United States Pipe Line Company, a corporation duly chartered under the Act of April 29, 1874, P. L. 73,

and the supplement of June 2, 1883, P. L. 61, acquired by purchase from W. H. Herman, owner, the right to lay its pipe lines upon and through a certain farm in Lower Saucon Township in Northampton County. In the exercise of this right so acquired, the company in 1900 laid two lines of pipe upon and through said farm and close to the adjoining land of John C. Boyer, only four inches apart, and both approximately sixteen inches below the surface. Ten years thereafter the title to the Herman farm and the adjoining Boyer farm as well, passed by puchase to one A. C. Graham, who was acting at the time as the agent of the Bethlehem Steel Company, and who afterwards conveyed to said company. Both Herman and Boyer notified Graham of the location of the pipe lines. Subsequently the Bethlehem Steel Company engaged the Didier-March Company to erect for it a coke oven plant on the premises, and the Didier-March Company sublet the excavation and foundation work to Frank H. Clement, the appellant. Clement entered upon the work with the necessary equipment consisting of teams, steam cranes, concrete mixers, steam shovels, cars and locomotives. On 26th July, 1911, while proceeding with the work of excavation and using a steam shovel to a depth of three and one-half feet—the depth required under the terms of his contract—the steam shovel caught one of the oil pipes and broke it, with the result that the oil which was being conveyed through the pipes by pressure was forced upon and around the shovel, and the fire of the engine communicating, the shovel was seriously damaged by fire. The action was brought by Clement, the owner of the shovel, against the pipe line company to recover his loss, charging that the proximate cause of the loss was the negligence of the latter in the construction and maintenance of its oil pipe lines, the negligence consisting, first, in the company's failure to bury its pipes at a depth of twenty-four inches below the surface; and second, failure to give notice and warning to plaintiff of the existence of the same. By agreement the case was

submitted, under the provisions of the Act of May 14, 1874, P. L. 166, to Owen J. Roberts, Esq., as referee, who after hearing the parties and their proofs made return of his findings of fact and his conclusions of law. These being adverse to the plaintiff's claim, he entered judgment accordingly in favor of the defendant, and assessed the cost of the proceeding equally against the parties, agreeably to the provisions of the agreement of reference. From the judgment so entered, the plaintiff has taken this appeal. The assignments of error relate to questions of law only. The first proposition advanced by appellant is, that the pipe line company in constructing its lines upon and through the Herman farm, where the accident occurred, at a depth of only sixteen inches below the surface, did so in disregard and in violation of the provisions of the Act of June 2, 1883 (supra), requiring oil pipe line companies to bury their pipes at least twenty-four inches below the surface, and that therefore negligence is to be imputed to the defendant because of such violation of public law. The proposition assumes that the maintenance of the pipes at a depth of sixteen inches was the proximate cause of the accident, a matter about which there is no agreement. The finding of the referee is adverse to the plaintiff's contention in this regard. For purposes of the argument we may concede the fact to be as plaintiff contends, and the result must still be the same. A careful reading of this supplementary Act of June 2, 1883, wherein occurs the provision as to depth of the lines of pipe below the surface, has fully satisfied us of the correctness of the view adopted by the learned referee, namely, that it was intended to apply only in cases where the right to lay the pipes is acquired adversely, under condemnation proceedings, and can have no application where the right is acquired by purchase from the owner. The provision reads as follows: "And provided further, That any pipe line so laying its pipes under the provisions of this act, in occupying any lands, cleared and used for agricultural purposes,

shall bury the same at least twenty-four inches below the surface, and if any line of pipe over or through any waste or woodland which shall afterwards be changed from waste or woodland to farming land, then it shall be the duty of the pipe line company to immediately bury the pipe to the depth of at least twenty-four inches as aforesaid." The act in express terms gives to any pipe line company the right to appropriate a right of way and locate its pipes or tubes "upon and over, under and across any land, waters, streams, rivulets, roads, turnpike roads, canal or other highway," with the following restrictions or saving clauses, 1st, that such lines may be constructed, through, over, under, or upon the streets, lanes, alleys, or highways within any city or borough, only with the consent of the municipalities; 2d, that when the pipes cross any railroad or canal, they shall be located above or below the same; 3d, that the company shall not take a fee in any lands acquired under any provision of the act, except such as are acquired by actual purchase; 4th, that in occupying any lands cleared and used for agricultural purposes the lines shall be buried at least twenty-four inches below the surface. A mere reading of the act must satisfy any one that the provision requiring the burying of the lines in land used for agricultural purposes could not have been suggested or adopted out of consideration for public safety. It gives the right to lay pipes upon and across public highway, upon and along streets and alleys in cities and boroughs, and over all other lands in the State, except such as are used for agricultural purposes, and in no case conditions the right upon their being laid underneath the surface except in one case, and that a place where of all others danger to the public is least to be apprehended. For all that appears to the contrary the pipes may be laid upon the surface of the ground, except where they pass through or over land used for agricultural purposes, and just as soon as waste or woodland, over either of which they may have been laid on the sur-

face, is subjected to agricultural use, and not until then, the pipes must be laid below surface at least twenty-four inches. Were this intended as a police regulation, how futile and ineffective it would be. Its glaring insufficiency for such an end, in guarding points least of all exposed, and leaving unguarded points where danger might reasonably be apprehended, is sufficient in itself to forbid one imputing to the legislature any such purpose. Dismissing then from consideration the suggestion that the purpose of the provision was the protection of public safety, the only conceivable purpose must be that found by the learned referee, namely, the protection of the farmer in cases where, because of the right of eminent domain in the corporation, he could not protect himself, however much he might wish to preserve his land for agricultural uses, against the desire of the corporation to appropriate it. As said by the referee, "the restriction finds its proper office in the protection of the farmer, over whose lands the company desires to condemn, and is empowered to condemn a right of way." There was no taking of the land in this case by condemnation under the right of eminent domain. The right was acquired by purchase from the owner upon terms mutually agreed upon, one of which was, that the pipes were to be laid "so as not to interfere with the usual cultivation of the premises." That they were so laid, and to the entire satisfaction of the owner, is not questioned. Nothing can be found in the act, either in its letter or spirit, that qualifies in any way the right of the owner of the premises to grant a pipe line company the privilege of carrying its lines over his land upon such terms, and under such conditions as he may choose to require. It follows then that no presumption of negligence arises from the failure of the defendant company to bury its lines to the depth required in cases of adverse taking; and therefore, if the company can be charged with negligence at all, it must be under plaintiff's second proposition, namely, that defendant was guilty of negligence in failing to give

plaintiff notice and warning of the location of the pipes, and of the fact that they were sixteen inches below the surface. This can be answered only as regard is had to the situation of the parties, their relation, or want of relation, to each other, as the case may be, and the relation of each to the subject of complaint. To constitute negligence there must be a disregard of some duty or rule of conduct arising either by implication of law or created by express statute. Where there is no duty, there can be no liability. Now what duty did the defendant company owe this plaintiff? If any, it was not one created by statute, as we have seen, but one which must be derived by implication from the circumstances we have above indicated. The parties to the action were strangers to each other, so far as the original laying of the pipes was concerned. The plaintiff had no right to interfere even in the remotest way; it was no concern of his how the pipes were laid; that was a matter that concerned nobody but the defendant and the owner of the land. The lines were constructed by the defendant company for its own exclusive use and advantage under a grant from the owner of the land, subject to the condition that the pipes should be so laid as not to interfere with the usual "cultivation of the premises." The owner was satisfied that if laid at a depth of sixteen inches they would not interfere with the usual cultivation of the premises; and so it proved during the ten years of occupancy and cultivation by Herman. Up to this point the general public, of whom the plaintiff was one, was without interest. Except as introduced upon the land by owner, or given permission by the defendant company, any one invading the premises or interfering with the defendant company's lines would have been a trespasser. But here the situation changes. In 1910 title to the land passed from Herman to the Bethlehem Steel Company. This company desiring to utilize the land for other purposes than "usual cultivation," proceeded to erect thereon a coke oven. To accomplish this extensive excavation was

required. The work was committed to plaintiff, a contractor, who entered upon the premises with his machines as licensee of the then owner. He was no longer an outsider and stranger, but, being there by right, he was in a relation that raised a clear implication of duty on the part of some one, in view of the character of the work he was to do, and the operation of the machine he was employing to accomplish it, and in view of the further fact that there was nothing on the surface to indicate the location of the pipes, to inform him with respect to it so that collision might be avoided. It is not for us to say whose duty that was. It is enough to know for the purposes of this case—and that is all that we are inquiring about—that the duty did not rest on this defendant company, except as it is made to appear that it had notice or knowledge of the fact that the then owner of the premises proposed to utilize the land where the pipes were laid for other and different purposes than for the cultivation of the soil, and for purposes which might reasonably require other signs and markers to indicate the exact location of the pipes in order to avoid contact with them. Had the then owner of the farm, the steel company, undertaken the work of excavation on its own account, by its own workmen and its own machinery, without notice to this defendant, the steel company having succeeded to just such rights as had been in Herman, and being chargeable with the knowledge of the true location of the pipes, and the accident had occurred under such conditions, it could hardly be contended that the defendant company could have been held liable for the loss. How is the situation changed by the fact that the accident occurred to its own licensee, who for the time being was the steel company's representative or agent? The ninth conclusion of law by the referee correctly states the law with respect to this point. It reads as follows: "The plaintiff is chargeable with the notice concerning the location of the pipe lines in the same measure, and to the same extent, as notice was brought home of its existence

and location to the Bethlehem Steel Company, his li-'censor," and the finding of fact being that the Bethlehem Steel Company had notice before it acquired title of the location of the pipe line, there remains no ground for imposing liability on the defendant company. The other questions discussed upon the argument of the case are necessarily resolved by this conclusion, and need not be specifically referred to. The assignments of error are overruled, and the judgment is affirmed.