### COMMISSIONER OF INTERNAL REVENUE v. TYLER et al.
### No. 5297.

Circuit Court of Appeals, Third Circuit.

Sept. 11, 1934.

Walter L. Barlow and Sewall Key, both of Washington, D. C., for petitioner.

Wm. R. Spofford and Dudley T. Easby, Jr., both of Philadelphia, Pa., for respondents.

Before DAVIS and THOMPSON, Circuit Judges, and FAKE, District Judge.

THOMPSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals. The facts, as set forth in the petitioner's brief, are as follows:

The respondents are the trustees of the last will and testament of William L. Elkins, deceased, and in that capacity were the holders of 66 shares of the capital stock of the Delaware Company which had been acquired by the decedent prior to March 1, 1913, and upon the latter date had a value of $100 per share. The Delaware Company owned a controlling stock interest in the Westmoreland Water Company, a Pennsylvania corporation, and in the Dennison Water Supply Company, an Ohio corporation. The Community Water Service Company was desirous of obtaining control of these three companies, and, on November 10, 1927, entered into an agreement with certain stockholders of the Delaware Company owning less than 80 per cent. of its capital stock in which it agreed to purchase the stock of the Delaware Company, provided at least 80 per cent. of such stock could be delivered at a price of $1,032 per share. This contract further pro--

vided for the establishment of an escrow with the Safe Deposit & Trust Company of Greensburg, Pa., hereinafter called the depositary. On November 14, 1927, the depositary, as provided by the foregoing agreement, wrote a circular letter to all the stockholders of the Delaware Company, calling their attention to the fact that such tentative contract had been made and that out of the agreed price for each share there was to be deducted the sum of $32 per share to cover all expenses necessary in the consummation of such sale. This letter further stated that:

"If you wish to sell your shares upon the terms herein stated you should execute in blank the printed assignment appearing upon the back of your certificates . *. This company will promptly upon the receipt of your certificates send you its receipt and in the event the sale is consummated shortly after January 1, 1928, remit by its cashier's check to your address the proceeds of the sale in accordance with the terms of this letter, otherwise your certificates will be returned.

"The receipt of the certificates for your shares by this company shall be deemed and taken as your authority to dispose of your shares in accordance with the terms of this letter."

On November 25, 1927, respondents duly transmitted their 66 shares to the depositary properly indorsed as required by the foregoing notice. Prior to December 1, 1927, more than 80 per cent. of the outstanding stock of the Delaware Company had been deposited and, prior to December 17, 1927, had been transferred and delivered by the depositary to the purchaser, the Community Water Service Company, and the purchase price thereof had been deposited by the purchaser with the depositary. On January 5, 1928, the depositary mailed to the respondents a check for $66,000 in payment for their shares which was the agreed price less the $32 per share applied to the payment of expenses. The respondents realized a profit of $59,400 on this sale. Respondents kept their books and filed their income tax returns on the cash receipts and disbursements basis. The Commissioner of Internal Revenue determined that the profit on the above-mentioned transaction was realized by the respondents in 1927, and assessed a deficiency of $9,160.71 for such year. Upon appeal, the Board of Tax Appeals reversed the Commissioner's determination and held that the profit was not realized until 1928, and hence that there was no deficiency for 1927. The Commissioner brings the question thus presented to this court for review.

Whether the profit was realized in 1927 or 1928 is dependent upon whether the Safe Deposit & Trust Company of Greensburg was the agent for the respondents, since they concede that, if the trust company was their agent, receipt of the purchase price by it in 1927 was equivalent to receipt by them.

The statement of facts, copied from the petitioner's brief and therefore most favorable to him, does not substantiate his claim that a principal-agency relationship existed between the respondents and the trust company. The element of control necessarily present in such a relationship is entirely lacking. Neither the respondents nor any of the minority shareholders exercised any supervision or control over the trust company. From the time the trust company mailed the letter which contained the details of the deposit agreement until the time it mailed the check to the respondents, it acted as an independent third party.

The respondents lacked the right not only to control the trust company, but also to withdraw the certificates deposited with it. They, in common with all other shareholders who forwarded their certificates to the trust company, were mutually bound by the deposit agreement. In Habirshaw Electric Cable Co. v. Habirshaw Cable Co. (C. C. A.) 296 F. 875, 43 A. L. R. 1035, certiorari denied 265 U. S. 587, 44 S. Ct. 633, 68 L. Ed. 1193, it was held that a shareholder, to whom a reorganization plan had been submitted and who had assented to the plan by depositing his shares with the designated committee, lacked the right to withdraw them.

Neither the cases nor the Treasury Regulation relied upon by the petitioner sustain his contention that the income was received by the respondents in 1927 rather than in 1928. The cases (Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; Appeal of L. & M. Holding Co., 3 B. T. A. 601; Appeal of Julia A. Strauss, 2 B. T. A. 598) hold that the receipt by an agent, on behalf of his principal, of income to which the principal is presently entitled without limitation or qualification, constitutes constructive receipt by the principal. In the instant case, however, the respondents were not entitled to the income until some time subsequent to January 1, 1928. This undeniably amounted to a time limitation.

Treasury Regulation 74, Article 332, reads:

"Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition."

The doctrine of constructive receipt is applicable only when there is no substantial limitation or restriction as to the time of payment to the taxpayer. The deposit agreement, however, does limit and restrict the time of payment, since it specifically provides that the depositing shareholders are not to receive any money until after January 1, 1928. They could neither demand their share nor control its disposition prior to that date. Under the agreement, the respondents could not and did not in fact or constructively receive the money for their shares until 1928. We are of the opinion, therefore, that the Board of Tax Appeals did not err in holding that the income was earned in 1928, and that the profit therefrom was taxable in that year.

The decision of the Board of Tax Appeals is affirmed.