**F. Willard GRIFFITH and Theodora A. Griffith, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 380–64.**

United States District Court
D. New Jersey.

Sept. 28, 1965.

Foosaner, Saiber & Schlesinger, by Norman E. Schlesinger, Newark, N. J., for plaintiffs.

David M. Satz, Jr., U. S. Atty., by David A. Wilson, Jr., Burton G. Lipsky, Dept. of Justice, Washington, D. C., for the Government.

WORTENDYKE, District Judge.

This is a civil action for refund of income taxes and interest paid by the plaintiffs, husband and wife, for the years 1953 through 1960, plus interest thereon in accordance with 28 U.S.C. § 2411(a). This Court has jurisdiction under 28 U.S.C. §§ 1340 and 1346(a) (1) and 26 U.S.C. § 7422.

The parties have stipulated the facts and I find, in accordance therewith, as follows:

Plaintiffs filed timely joint income tax returns for the calendar years 1953 through 1960, setting forth in each return the sum of $12,000.00 as alimony payments to Mr. Griffith's former wife, Florence H. Griffith, and claiming as deductions premium payments upon an insurance policy upon Mr. Griffith's life, as additional alimony payments to his former wife.

(2) The Commissioner of Internal Revenue determined that the premium payments were not deductible and assessed additional tax amounts and interest for the tax years in question, which were duly paid.

(3) On June 29, 1962 plaintiffs filed timely claims for refund of overpayments for the years 1953 through 1960 in a total amount of $25,067.55; and on April

2, 1964 the Commissioner duly notified the plaintiffs of his disallowance of their claims.

(4) Prior to the marriage of the present plaintiffs, Mr. Griffith (hereinafter taxpayer) had been married to Florence H. Griffith; but on July 12, 1946 taxpayer and his then wife, Florence, each with the advice of independent counsel, executed a written agreement providing for alimony and for the support and maintenance of the wife and children born of the marriage in contemplation of a divorce *a vinculo*. A true copy of the agreement is annexed to the stipulation.[1] The agreement between the parties became effective by its terms upon the entry of the final decree in favor of Mr. Griffith in the then pending divorce proceeding, and, with the approval of the Court, were merged in and attached to the decree *nisi* and regarded as incident to that and the final decree.

(5) A decree *nisi*, dissolving the marriage of taxpayer and Florence, was entered in the Court of Chancery of the State of New Jersey on July 17, 1946, and a copy of the aforesaid agreement was annexed to and incorporated by reference in that decree. A final divorce decree between the parties was entered on October 18, 1946. A true copy of the decree *nisi* and a true copy of the final divorce decree between the parties are also attached to the stipulation.

(6) Pursuant to his written application dated April 30, 1946 a life insurance policy was issued by Home Insurance Company on taxpayer's life, number 537,- 796, in the face amount of $100,000.00 and a copy of that policy is also attached to the stipulation.[2]

(7) Taxpayer paid to the insurance company, during the years 1953 through 1960, in accordance with this agreement, the premiums required by the terms of the policy, less the amounts of dividends accruing thereon.

(8) On July 8, 1946 taxpayer wrote to the Commissioner of Internal Revenue requesting a ruling letter upon the question of whether alimony payments, inclusive of premiums upon the life insurance policy in question, would be deductible from taxpayer's taxable income. In response to that letter of inquiry, a Deputy Commissioner of Internal Revenue wrote to taxpayer, under date of

---

1. Article V of the agreement provided in part as follows:

"V. In addition, Mr. Griffith agrees to procure and deliver to Mrs. Griffith policies of insurance with a reputable life insurance company or companies in the face amount of $100,000.00 on his life payable to Mrs. Griffith as beneficiary. The policy shall run for a twenty year duration during which time Mr. Griffith shall pay the premiums so as to maintain it in full force and effect without lapse. In the event a default shall occur in the payment of any of the premiums upon such policy or policies and the said insurance shall lapse and Mr. Griffith shall die without such insurance in effect during the time he is required by this agreement to keep it in effect, Mrs. Griffith shall be entitled to receive out of the husband's estate the sum of $100,000.00 free from all inheritance tax. * * *

"Upon demand Mrs. Griffith at any time during the twenty year period aforesaid may obtain the cash surrender value of the insurance policy or policies above mentioned and Mr. Griffith hereby agrees to execute any and all instruments neces-

sary to effect this end. Should Mrs. Griffith avail herself of this option, the insurance provision above set forth shall terminate and it will not be necessary for Mr. Griffith to provide the said insurance."

2. The beneficiary originally named in the policy was "the Executors or Administrators of the estate of the insured" [Francis W. Griffith]; but on October 28, 1946, the following "Ownership Provision" endorsement was added:

"Anything in this policy to the contrary notwithstanding, during the insured's lifetime, Florence H. Griffith, his wife, while living, in the place and stead of the insured, or if his said wife is deceased, the insured, shall be the owner of this policy and may, without the consent of any beneficiary not irrevocably designated, exercise any option, enjoy any privilege, and receive any benefit whatsoever contained in this policy, including, but not by way of limitation, the right to change the beneficiary, whether or not such option, privilege or benefit is specifically reserved to the insured by the terms of this policy."

July 10, 1946, advising him, in part, as follows: "The Bureau holds that the periodic payments as set forth in the proposed agreement which are made subsequent to a decree of divorce constitute an allowable deduction from your gross income and are includible in the gross income of your wife since the agreement is incident to the divorce decree."

(9) On August 21, 1946 taxpayer requested the insurance company to apply dividends to reduce the amount of premiums payable upon the policy, and taxpayer regularly paid the net premiums thereon until June 8, 1961, when he advised the insurance company that he would make no further premium payments upon the policy and that the company should look to his former wife for further premium payments if she should desire to continue the insurance in force.

(10) On October 20, 1960, Florence H. Griffith borrowed the then existing cash value of the policy from the insurance company. The loan was in the amount of $26,100.00 less interest of $657.27. Thus, she received from the insurance company $25,442.73.

(11) On August 26, 1961 the policy was continued under the extended term provisions for the non-payment of premium, and on July 31, 1962, the policy expired without value.

(12) Florence H. Griffith died August 29, 1961. Taxpayer survives.

The Government has moved the Court for summary judgment. It contends that taxpayers are not entitled to deduction for the insurance premiums paid pursuant to the divorce decree agreement, because by the terms of the agreement the former wife had only a contingent interest in the proceeds of the insurance policy. Movant's principal reliance for support of this contention is to be found in Kiesling v. United States, 3 Cir., June 30, 1965, 349 F.2d 110.

In opposition to the Government's motion, Mr. Griffith has filed an affidavit in which he states that in the course of the negotiations between him and his former wife, Florence, her attorney, in conjunction with his request that Mr. Griffith provide her with a $100,000 insurance policy on his life and maintain the same for twenty years, further requested that he take whatever steps were necessary to provide her with the right to withdraw the cash surrender value of the policy. During the same negotiations, Mr. Griffith displayed to his wife's attorney the life insurance policy on his life hereinabove referred to, and he states that he understood that, in order to comply with the terms of his agreement with his wife, it would be necessary for him to take appropriate steps to provide her with sufficient control over the policy to enable her to withdraw the cash surrender value thereof at any time during the twenty year period referred to in the agreement. In the same affidavit it is further averred that, upon consultation with an appropriate representative of the life insurance company which issued the policy, it was suggested that, in order to comply with the terms of the agreement, ownership of the policy should be transferred to Florence Griffith. Accordingly, Mr. Griffith obtained and executed, on October 18, 1946, a transfer of ownership form, which elicited the policy endorsement [footnote 2 supra].

■ In his brief in opposition to the pending motion, the taxpayer argues that parol evidence is admissible to interpret and give meaning to the agreement in question, and that the present motion should not be granted because such parol evidence may raise a genuine issue of fact relevant to its interpretation. F.R. Civ.P. 56(b) authorizes a defendant to move for summary judgment, and subdivision (c) of that Rule provides that such a judgment may be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The parties have stipulated the facts in this case and copies of the documents referred to in the stipulation

are annexed thereto. The language of the agreement upon which the defendant contends that the life insurance premiums (concededly paid by the insured) were not deductible for income tax purposes, is clear, unambiguous, readily understandable and construable by the Court. The phrase "procure and deliver" describing the obligation of Mr. Griffith under paragraph V (footnote 1 supra) of the agreement is comprised of two simple English transitive verbs joined by the conjunctive "and". There is no ambiguity in the phrase or in the meaning of the words comprising the same. The object of the verbs is expressed in the well-understood collective noun "policies of insurance" and the verbs are modified by the adverbial clause "to Mrs. Griffith". The "policies of insurance" are described adjectivally as being "on his life [and] payable to Mrs. Griffith as beneficiary." Although the agreement expressing the undertaking of the taxpayer with regard to life insurance was executed July 12, 1946, and the policy of life insurance upon the taxpayer's life was procured on April 30, 1946, it was procured in contemplation of the agreement then in process of negotiation, and for the purpose of meeting the provisions required to be contained therein. Nowhere in the language of the agreement, or in the stipulation of facts, or in the affidavit of the taxpayer, is there any basis for his contention that the word "procure", as used in the agreement with respect to the life insurance, imported any other than its usual connotation. Plaintiff further argues that the verb "deliver", as used in the agreement with respect to a policy or policies of life insurance, must be considered modified by the language which obligated the taxpayer "to execute whatever instruments may be necessary for his former wife to obtain the cash surrender value of the policy." Therefore, says the plaintiff, the word "deliver" must be construed to require a transfer of title to the insurance policy from the insured to his then wife. Assuming, *arguendo*, that taxpayer is correct in this statement of

his contract obligation, his conclusion therefrom, that the meaning of the word "deliver" must be clarified by parol or other extrinsic evidence, does not follow. His contention that the language of the agreement providing that, upon demand at any time during the twenty year period of the policy, Mrs. Griffith might obtain the cash surrender value thereof, and that Mr. Griffith would execute any and all instruments necessary to effect that end, is ambiguous and unclear, is without support on the face of that language. I find no ambiguity or lack of clarity therein, and therefore no basis for the admission or consideration of any testimony respecting the intentions of the parties to the agreement or the meaning of its terms. The argument of the taxpayer that the word "obtain", in the phrase respecting the cash surrender value, is also ambiguous, is without foundation in the language. "Obtain" means "to get or secure," and if Mrs. Griffith was placed in a position to secure the cash surrender value of the policy, she could either turn in the policy and obtain the cash, or borrow on the policy with its surrender value as security. None of the decisions which the taxpayer cites in an effort to support his contentions with respect to the language of the agreement as related to the policy is authority for taxpayer's contention.

Section 215 of the Internal Revenue Code of 1954, 26 U.S.C. § 215, provides that a husband shall be allowed to deduct payments made by him during his taxable year which are includible in the gross income of his wife under Section 71. Section 71(a) (1) of the same Code (26 U.S.C. § 71) provides that if a wife is divorced from her husband under a decree of divorce, her gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree. While it is true that the life insurance policy here involved was procured

by the husband before his agreement with his then wife was executed, the agreement was made in contemplation of the pendency of an action for divorce, and became incorporated in the final decree which was entered in the divorce proceedings. By virtue of the decree *nisi* in those proceedings, which was confirmed by the final decree, the taxpayer was required to comply with the agreement by the terms of which he became obligated to pay the premiums upon the life insurance policy. He complied with that requirement and paid the premiums during the tax years in question. Did his wife thereby receive any taxable economic benefits from such premium payments?

In Hyde v. Commissioner, 2 Cir., 1962, 301 F.2d 279, payments of premiums on insurance upon the husband's life were held to be taxable income to the wife. In that case there was a separation agreement between the parties by the terms of which the husband promised to pay to the wife, or at her direction to the insurers direct, all premiums on life insurance policies upon his life, and assigned all of his interest in the policies to his wife. As assignee of the policies she had the power to change the beneficiary named in and to obtain loans, and receive dividends upon the policies, and to obtain the cash surrender values thereof. She was also authorized to assign the policies. In the event of her survival of her husband, she could obtain the proceeds of the policy for herself. If she predeceased him, her interest in the policies passed to her estate. He retained no interest in the policies, either for himself, his children or any other party. The Court in Hyde, held that the payments of the premiums on the policies by the husband were income to his wife because they were made exclusively for her benefit, and must be considered as periodic payments to her and includible in her taxable income under Section 71, as amounts paid to third parties exclusively for her benefit and not intended as gifts. Being taxable to the wife, the payments would not be taxable as income to the husband.

In Seligmann v. Commissioner, 7 Cir. 1953, 207 F.2d 489, (cited, but distinguished, in Hyde, supra) life insurance premiums paid by a husband upon policies upon his life were held *not* to constitute income to the wife beneficiary, and therefore were not deductible by the husband, because the interest of the wife in the policies was contingent. Treasury Regulations on Income Tax (1954 Code) Section 1.451–2 (26 C.F.R. Sec. 1.451–2 (a)), construing the phrase "subject to substantial limitation or restriction" as applied to a taxpayer's control of income, provides that "income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." It is obvious that the premium payments were not deductible by the husband unless they constituted income to his wife. In Hyde, supra, such payments were held to be income to the wife because of the absolute character and completeness of her interest in the policies. Where, however, her interest is contingent, as would be the case where it became necessary for her to survive her husband in order to obtain the proceeds of the policy, the premium payments by her husband would not be deductible from his taxable income, or taxable to her. Smith's Estate v. Commissioner, 3 Cir. 1953, 208 F.2d 349.

In the present case, Mrs. Griffith's interest in the proceeds of the life insurance policy depended not only upon her survival of her husband, but it was necessary that his death occur within the twenty year period provided in the agreement.

We turn now to Kiesling v. United States, decided by the Third Circuit Court of Appeals on June 30, 1965, 349 F.2d 110. In that case the facts were as follows: By the terms of a decree of divorce a husband was required to maintain a $25,000 life insurance policy on his life naming his wife as beneficiary. This policy was to be kept in force during the husband's life and as long as the wife remained unmarried. The husband was obligated to deliver the policy to his wife. In reversing the District Court, which had held that the taxpayer husband was entitled to deduct a certain percentage of the life insurance premiums paid by him because he was under a legal obligation to pay them, and that his wife's interest in the policy was absolute and vested, the Court of Appeals, after reviewing, *inter alia*, the Seligmann, Smith and Hyde cases supra, held that since the taxpayer retained ownership of the insurance policy, and his wife's interest as beneficiary thereof was contingent and not absolute, the premiums paid by the husband were not deductible under Section 215. The court concluded that the wife's interest in the policy was contingent because "her interest in the policy ceased upon her death or remarriage during the taxpayer's lifetime; her designation as beneficiary was revocable; the policy had not been assigned to her; she had no right to assign it, or to obtain its cash surrender value, or to borrow on it; under the policy's specific provisions she obtained 'no vested interest' in it; and the taxpayer retained the right to 'exercise every right, receive every benefit and enjoy every privilege conferred by the policy.'"

Did taxpayer's former wife in the case at bar realize a taxable economic gain during the years in question? It is obvious that she received neither cash nor property during those years. What she did receive at the time the agreement was executed was the right to have the premiums upon the life insurance on her husband's life paid by him. Through the payment of those premiums she did acquire the right to obtain the cash sur-render value of the policy or to borrow upon it at any time she chose, but only during the twenty year period covered by the agreement. However, by exercising that right with respect to the cash surrender value, she would deprive herself of the then still contingent right to the full proceeds of the policy should her husband die during the same period. Were she to avail herself of the right to borrow upon the cash surrender value, her right to the full proceeds of the policy, should he die during the twenty year period of the agreement, would be diminished *pro tanto*.

The question is presented whether her right in the cash surrender value of the policy was so free of contingency as to require that the premiums which were paid by her husband were constructively income to her, and therefore taxable to her. Unless they were taxable income to *her*, her husband could not claim deduction of the premium payments from his gross income. Neither the premiums nor the cash surrender value were *actually* received by her. They were not *constructively* received by her because her "control of [their] * * * receipt [was] * * * subject to substantial limitations or restrictions." Treas. Reg. on Income Tax (1954 Code), Sec. 1.451–2(a). In addition to the contingencies hereinabove stated there was that inherent in the husband's right to utilize accuring dividends in diminution of premiums due, and to allow the policy to lapse by defaulting in the premium payments, as contemplated by paragraph V of the agreement. Although the wife had the right to demand the cash surrender value of the policy at any time during the twenty year period of the policy, while the husband was still living, by so doing she would have deprived herself of the possibility of receiving the face amount of the policy if he had died thereafter but during that twenty year period. Because of such a necessary consequential loss which the exercise of her right to the cash surrender value would entail, it may not be contended that the annual increase in cash surrender value resultant

from the husband's premium payments was a constructive income receipt by her. C. I. R. v. Tyler, 3 Cir. 1934, 72 F.2d 950; Cohen v. C. I. R., 39 T.C. 1055, 1063. The inevitable deterrent consequence inhibited her exercise of her right to demand the cash surrender value. Hence, the amount thereof could not be considered a constructive receipt.

The private ruling issued to the taxpayer in the Deputy Commissioner's letter of July 10, 1946 was revoked and supplanted by the public ruling published by the Internal Revenue Service in 1950 (I.T. 4001, 1950–1 Cum.Bull. 27). The latter ruling stated that premiums paid by a husband on a life insurance policy absolutely assigned to his former wife of which she is the irrevocable beneficiary are includible in the gross income of the wife and therefore deductible by the husband; but that where the policy is not assigned to the wife, and she is only the contingent beneficiary thereof, the premiums paid by the husband are neither includible in the gross income of the wife nor deductible by the husband. Mr. Griffith's letter to the Commissioner of Internal Revenue dated July 8, 1946, which elicited the Deputy Commissioner's private ruling of July 10, 1946, failed to state that the insurance policy upon his life would be assigned to his wife, but did recite that her death prior to his, the elapse of twenty years, and her remarriage were obstructive contingencies in the way of her recovery of the face amount of the policy proceeds.

■ The Commissioner was not required to give the taxpayer direct notice of the revocation of the prior private ruling. Rev.Proc. 62–28, 1962–2, Cum. Bull. 476, 504, 505 Sec. 13 provides as follows:

".01 * * * If a ruling is revoked or modified, the revocation or modification applies to all open years under the statutes * * *

".04 A ruling found to be in error or no longer in accord with the position of the Service may be modified or revoked. Modification or revocation may be effected by a notice to the taxpayer to whom the ruling was issued, or by a Revenue Ruling or other statement published in the Internal Revenue Bulletin."

The publication was a valid and effective alternative to notice to the taxpayer of revocation.

■ I conclude that the defendant's pending motion for summary judgment presents no genuine issue of fact, and that, on the face of the pleadings, the stipulation of facts and the affidavit of F. Willard Griffith, the defendant is entitled to judgment as a matter of law. An appropriate order may be submitted.