L. B. Maytag, Jr., and Marquita M. Maytag v. Commissioner.
Maytag v. Commissioner
Docket No. 729-64.
United States Tax Court
T.C. Memo 1965-313; 1965 Tax Ct. Memo LEXIS 17; 24 T.C.M. (CCH) 1746; T.C.M. (RIA) 65313; December 3, 1965
William A. McDonald and Claude M. Maer, Jr., for the petitioners. Williard A. Herbert, for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: Respondent has determined deficiencies in the income tax of petitioners for the taxable years 1960 and 1961 in the respective amounts of $11,745.16 and $17,221.33. The only issue presented is whether respondent has erred in disallowing a deduction for each such year representing amounts received by petitioner L. B. Maytag, Jr.'s (hereinafter sometimes referred to as petitioner) former wife from the income of a support trust established by petitioner in pursuance of a predivorce *18 agreement. All of the facts have been agreed to and are found herein as stipulated. Petitioners are husband and wife who reside in or near Colorado Springs, Colorado. Marquita M. Maytag is a petitioner in this case for no other reason than she filed joint income tax returns with her husband, petitioner L. B. Maytag, Jr. They filed timely joint income tax returns, employing the cash method of accounting, for the calendar years 1960 and 1961, with the district director of internal revenue for the district of Colorado. Petitioners claimed three dependency deductions in their 1960 and 1961 income tax returns, one for each of them and the third for their daughter, Marquita. Petitioners' return for 1960 showed a tax liability of $168,870.10, which was fully paid, pursuant to an extension of time for filing, by May 18, 1961. Of this payment, $260.93 was refunded in 1962. Petitioners' return for 1961 showed a tax liability of $205,458.67 which was paid, under section 6513(b), Internal Revenue Code of 1954, on April 15, 1962. In his notice of deficiency the respondent determined that petitioners' income was understated in the amounts of $20,612.78 in 1960 *19 and $25,587.22 in 1961, being amounts distributed to Lucretia D. Maytag (hereinafter referred to as Lucretia), the divorced wife of petitioner L. B. Maytag, Jr., by the Lucretia D. Maytag Support Trust. On June 1, 1958, L. B. Maytag, Jr., and Lucretia entered into an agreement which read as follows: THIS AGREEMENT, Made and entered into this 1st day of June, 1958, by and between LUCRETIA D. MAYTAG, hereinafter called the "wife", and L. B. MAYTAG, JR., hereinafter called the "husband"; WITNESSETH: WHEREAS, the parties are living separate and apart and contemplate that the wife will institute a divorce action against the husband, and the parties are desirous of amicably settling all questions of property, property division and property rights, alimony, both temporary and permanent, support money, support and maintenance of children, and all other allowances, divisions and awards. IT IS, THEREFORE, MUTUALLY AGREED by and between the parties: 1. That the wife shall have custody of the three minor children of the parties and the husband shall have rights of visitation to see or call upon said children at all reasonable times, giving to the wife prior notice of his intentions *20 so to call or see said children. The husband shall also have the right to have said children with him during a portion of vacations or holidays when such visitation shall not unduly interfere with the education or normal routine of said children. 2. The husband has heretofore assigned, set over or conveyed to the wife securities having a present market value of $56,804.63, and he agrees to forthwith transfer, assign and set over to the wife additional securities of a type satisfactory to the wife and having a present market value sufficient so that when taken in connection with the present market value of the securities previously transferred and assigned the total market value as of this date will be $100,000.00. 3. The husband further agrees that he will forthwith upon the execution of this Agreement transfer, set over and assign to the wife unencumbered merchantable title to the property now occupied by the wife and located at 6 El Encanto, Broadmoor, El Paso County, Colorado, and, in addition, the husband agrees to assume and pay the following described bills in connection with the alteration, improvement and landscaping of said property: Lawn
$850.00
Landscaping
880.68
Curtains in basement
250.00
Finish-up items, such as screen
doors, incinerator, curbing, etc.
payable to contractor
750.00
Bookcase and radio unit purchased
through Harry Francis
850.00
Gravel for driveway - approximately
75.00
*21 4. The husband agrees that he will assign and set over, by Bill of Sale or other proper instrument, all of his right, title and interest in and to all of the furniture, furnishings and equipment located in the property at 6 El Encanto Road; provided, however, that it is mutually agreed between the parties that the husband shall keep and retain, as his sole property the piano which was a gift from the husband's aunt. 5. The husband shall further furnish to the wife, and transfer to her by proper endorsement on the title, a new Ford automobile of a type and model satisfactory to her, the same to be free and clear from all liens and encumbrances. 6. The husband shall establish a trust at The First National Bank of Colorado Springs, Colorado, with said Bank as Trustee, and set over or convey to said trust cash, stocks or securities having a present market value of not less than $400,000.00. The trustee shall be instructed to pay all the net income from said trust to the said wife so long as she shall live or until she remarries. The trust shall further provide that, in case the gross income from said trust shall for any calendar year be less than $22,000.00, the trustee shall, upon *22 her request, pay to the wife, out of principal, a sufficient sum so that when taken in connection with the gross income of said trust, the total amount shall be $22,000.00, and said payment so made shall be for the support and maintenance of the wife and the three children of the parties. Said trust shall further provide that, upon the remarriage of the wife, the Trustee shall thereafter pay to her out of the income from said trust the sum of $3,800.00 per year, if she shall so request it, for so long thereafter as she shall live, and shall pay so much of the remainder of the income from said trust to the said wife as the Trustee shall, in its sole discretion and determination, deem necessary for the proper support, maintenance and education of said children who are then living with or dependent upon the said wife for their support and maintenance. When all of the children are either emancipated, self-supporting, or no longer dependent upon the wife for their maintenance, support or education, then all of the income remaining after the payment of $3,800.00 per year to the said wife shall be held, paid over to, or applied for the benefit of the said children of husband and wife in equal *23 shares, upon such terms, conditions and provisions as shall be agreed upon by the parties. Such income as shall not be paid to the wife or for the support or maintenance of said children shall be accumulated by the Trustee for the benefit of said children. Upon the death of the wife the Trustee shall divide the remaining trust fund into as many equal shares as there are children of the parties then living and shall hold one share for each of such children under such terms and conditions as may be agreed to by the parties in said trust instrument. 7. The above payments to the wife are intended to include all ordinary expenses of the children and the wife assumes and will pay such expenses. However, it is not contemplated that the extraordinary expenses for medical or dental care, or for high or special education for the children are assumed or are to be paid by the wife, and that all such extraordinary expenses will either be paid by the husband, or if he elects not to pay them, then they will be paid by the Trustee out of the principal of said trust fund. Expenses of operations, orthodontia, accidents, hospitalization and all boarding school, preparatory school, and college or university *24 attendance are to be considered as extraordinary expenses; provided that such extraordinary medical and dental expenses shall be limited to those in excess of $250.00 for one illness or course of treatment, and if such illness or course of treatment does exceed $250.00, the entire expense shall be considered an extraordinary expense. 8. The parties mutually agree that they will both join in the execution of the trust or shall sign such other documents as shall be necessary to properly evidence the fact that they are both joining in any gift to the children arising from the trust contemplated herein. The wife further agrees that she will use so much of her $30,000.00 lifetime exemption as shall still be available to her. Upon such basis, the husband agrees that he will pay any gift tax assessed as a result of this transaction. 9. The wife agrees to accept the above provision in lieu of all alimony, temporary or permanent, property rights, divisions or interests, support money, and any and all other awards to which she might be entitled by reason of her having been married to the husband. The wife waives her statutory rights of inheritance, widow's allowance and support, and agrees *25 to accept the provisions hereof in lieu thereof and in full consideration for such release. 10. The terms of this agreement may be, at the request of either party, incorporated into any decree, interlocutory or final, of divorce or separate maintenance which may be entered between the parties at any time hereafter. 11. The husband shall pay the wife's reasonable attorney's fee for all services in connection with the above settlement and divorce action. IN WITNESS WHEREOF, the parties have this day set their hands and seals. /s/ Lucretia D. Maytag (SEAL) Lucretia D. Maytag WITNESSES: /s/ Ben S. Wendelken, /s/ Mary Ellen Hall /s/ L. B. Maytag, Jr. (SEAL), L. B. Maytag, Jr. WITNESSES: /s/ John A. Love /s/ Brian J. Mullett By instrument dated June 1, 1958, L. B. Maytag, Jr., established, pursuant to the agreement of June 1, 1958, the Lucretia D. Maytag Support Trust. Pertinent portions of the trust agreement read as follows: THIS DECLARATION OF TRUST, Made at Colorado Springs, Colorado, this first day of June, 1958, by and between L. B. MAYTAG, JR., of Colorado Springs, El Paso County, Colorado, Party of the First Part, hereinafter referred to as the "Settlor", *26 and THE FIRST NATIONAL BANK OF COLORADO SPRINGS, a national banking association organized and existing under and by virtue of the laws of the United States of America, and having its principal place of business in Colorado Springs, Colorado, Party of the Second Part, hereinafter referred to as the "Trustee"; WITNESSETH: - WHEREAS, the Settlor is now married to Lucretia D. Maytag, and circumstances have arisen which make it impossible for the Settlor and the said Lucretia D. Maytag to longer live together divorced; and WHEREAS, the Settlor is desirous of providing for the support of the said Lucretia D. Maytag by means of a trust of certain property; NOW, THEREFORE, in consideration of the premises, the mutual covenants contained herein, and other good and valuable considerations, the receipt and adequacy of which is hereby acknowledged, the Settlor has and does hereby sell, assign, transfer, set over and deliver unto the Party of the Second Part, as Trustee, its successors and assigns, the property and securities described in Schedule "A" hereto attached and made a part hereof by reference, IN TRUST, NEVERTHELESS, for and upon the following mentioned uses and purposes: FIRST: *27 To pay to Lucretia D. Maytag out of income, quarterly or at more frequent intervals, the sum of $3,800.00 each calendar year for her lifetime. SECOND: To pay to Lucretia D. Maytag, quarterly or at more frequent intervals, all of the balance of the income arising from the trust for her lifetime, or until she shall remarry. THIRD: During the lifetime of Lucretia D. Maytag, or until she shall remarry, to pay to her out of principal, at her request, a sufficient sum so that when taken in connection with the income already paid under the provisions of FIRST and SECOND above the total payment during the calendar year 1958 shall be $12,834.00, and during each calendar year thereafter the sum of $22,000.00. FOURTH: If Lucretia D. Maytag shall remarry, then and at that time to use all of the income in excess of the $3,800.00 provided to be paid to Lucretia D. Maytag under the terms of Paragraph FIRST above, or so much thereof as the Trustee, in its sole and unrestricted discretion shall deem advisable, for the benefit of the children of the Settlor and Lucretia D. Maytag and/or the issue of said children, until the youngest survivor of said children shall reach the age of 21 years. When *28 the youngest survivor of said children shall arrive at the age of 21 years, to divide such income in excess of $3,800.00 into a number of equal shares equal to the number of the children of the Settlor and Lucretia D. Maytag who are either alive at the time of the remarriage of the said Lucretia D. Maytag or who, having died prior to such event, shall leave issue alive at the time of such event. As to such shares of income: (a) As to those shares set aside for children who shall have been alive at the time of the remarriage of Lucretia D. Maytag, to pay such shares directly to such child, or children, at quarterly or more frequent intervals; (b) As to those shares set aside for issue of such children who shall have died prior to said remarriage, to use said share or shares for the benefit of said issue until the youngest of said issue shall arrive at the age of 21 years. When the youngest of said issue shall arrive at the age of 21 years, to pay such share directly to said issue in equal shares if more than one; (c) If any of the children of the Settlor and Lucretia D. Maytag who shall have been alive at the time of the remarriage of the said Lucretia D. Maytag but shall thereafter *29 die before becoming entitled to receive possession of his or her share, or any portion thereof, as hereinafter provided, leaving issue him or her surviving, to use such deceased child's share of said income for the benefit of said issue until the youngest of said issue shall arrive at the age of 21 years. When the youngest of said issue shall arrive at the age of 21 years, to pay such share directly to said issue in equal shares if more than one; (d) If any child who shall have been alive at the time of the remarriage of the said Lucretia D. Maytag, but shall die before becoming entitled to receive his or her possessory share, leaving no issue him or her suviving, to divide such share into as many equal portions as there are other shares, and add such portions to the other shares hereinabove provided for. FIFTH: Upon the death of Lucretia D. Maytag, to divide the then principal of the trust fund into a number of equal shares equal to the number of the children of the Settlor and Lucretia D. Maytag who either are alive at the time of the death of the said Lucretia D. Maytag or who, having died prior to such event, shall leave a spouse and/or issue alive at the time of such event. *30 A. As to the share so set aside for such child or children of the Settlor and Lucretia D. Maytag who shall survive at the time of the death of Lucretia D. Maytag: (a) To apply the net income, or so much thereof as the Trustee, in its sole and unrestricted discretion, shall deem advisable, for the benefit of the child for whom such share is set aside until such child shall arrive at the age of 21 years; (b) Upon such child's arriving at the age of 21 years, to pay over to him or her the net income, in quarterly installments, or at more frequent intervals as deemed advisable; (c) Upon such child's arriving at the age of 25 years, to pay over to him or her one-third of the then market value of the principal, the same to be his or hers absolutely and forever and free from any trust; (d) Upon such child's arriving at the age of 30 years, to pay over to him or her one-half of the then market value of the principal, the same to be his or hers absolutely and forever and free from any trust; (e) Upon such child's arriving at the age of 35 years, to pay over to him or her the balance of the principal and all accumulations, the same to be his or hers forever and free from any trust; *31 (f) If any such child of the Settlor shall die before becoming entitled to receive possession of his or her share, or any part thereof, leaving a spouse and/or issue him or her surviving, to pay such share to and among such child's spouse and/or issue in such shares and estates and interests as such child shall appoint by Will duly admitted to probate. In default of appointment, to pay such share to such deceased child's issue in equal shares if more than one; Provided, however, that during the minority of any issue of a deceased child, the Trustee shall continue to hold such share in trust and use the income therefrom for the benefit of such minor until such minor shall reach the age of twenty-one years, at which time such shares shall be fully distributed; (g) If any such child of the Settlor shall die before becoming entitled to receive possession of his or her share, or any part thereof, leaving no spouse and/or issue him or her surviving, to divide such share into as many equal portions as there are other shares and add such portions to the other shares hereinabove provided for. B. As to any share set aside for a child or children of the Settlor who shall not be living at *32 the time of the death of Lucretia D. Maytag, but shall leave surviving them a spouse and/or issue: (a) To hold such share in trust and use the net income therefrom for the benefit of the issue of said deceased child until the youngest of said issue shall have arrived at the age of 21 years; (b) Upon the youngest of said issue arriving at the age of 21 years, to distribute the then undistributed principal outright to the issue of said child, in equal shares, share and share alike. SIXTH: If at any time during the continuance of the trust herein created the Trustee, in its sole and uncontrolled discretion, shall deem it advisable, proper or necessary, for any reason whatsoever, to use, pay over, or apply any or all of the principal of this trust fund to or for the benefit of any child or grandchild of the Settlor and Lucretia D. Maytag then receiving a portion of the income from such trust fund, then I direct my said Trustee to use, pay over, or apply such amounts, and at such times, and from time to time, as the said Trustee may determine; Provided, however, that the Trustee shall not use, pay over, or apply such amounts of principal as shall reduce the income of the trust fund *33 below a point where the $3,800.00 per year, hereinabove provided to be paid to Lucretia D. Maytag, shall not be possible of payment. In connection with the power in the Trustee to use, pay over or apply portions of the principal, it is the Settlor's specific intent that the income payments directed to be made to Lucretia D. Maytag are to include all necessary expenses of the children of the Settlor and the said Lucretia D. Maytag. Extraordinary expenses which may arise for medical or dental care, or for higher or special education for said children, shall be paid by the Trustee, upon the request of Lucretia D. Maytag, out of the principal of this trust fund. Extraordinary expenses for medical or dental care are defined for this purpose as those expenses in excess of $250.00 for one illness or course of treatment. SEVENTH: The Settlor states that it is the purpose of this trust fund to provide for the support and welfare of Lucretia D. Maytag and the children of the Settlor and Lucretia D. Maytag, and that such purposes are to be held by the Trustee to be paramount to the protection of the principal of the trust fund. In this connection, the Trustee shall not be bound to place any *34 percentage of the trust fund in fixed-income securities, but shall, to the best of its ability, and in its sole and unrestricted discretion, manage the trust fund so that a maximum income consistent with reasonable safety may be secured therefrom. The Trustee is specifically authorized, but not directed, to retain as a portion of this trust fund any and all shares of stock in the Maytag Company which shall constitute a part of the property originally transferred by the Settlor. EIGHTH: No portion of any income or principal given or payable to any beneficiary under this trust shall be subject to alienation by assignment or otherwise by the beneficiary in advance of his or her receipt thereof, nor shall the income or principal or any part thereof be subject to the interference or control of any creditor of any beneficiary. * * *
TENTH: For the purposes of this trust, the word "issue", whenever used, shall be deemed and construed to mean child or children either by blood or adoption. ELEVENTH: Whenever used in this trust, the words "children of the Settlor and Lucretia D. Maytag" shall be deemed to mean and include the three children born of their marriage, namely: Lewis B. *35 Maytag, III, Lucretia Doble Maytag, and Alison Tower Maytag. * * *
IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written. L. B. Maytag, Jr. / L. B. Maytag, Jr. Settlor THE FIRST NATIONAL BANK OF COLORADO SPRINGS By James B. Day / Trust Officer Trustee * * *
SCHEDULE A
217
Allied Chemical & Dye Corporation
Common Stock
200
American Cyanamid Co., Common Stock
230
General Motors Corporation Common
Stock
66
Gulf Oil Corporation Common Stock
100
Owens-Corning Fiberglas Corp. Com-
mon Stock
307
Sears, Roebuck & Co. Common Stock
200
Standard Oil Company (Indiana) Com-
mon Stock
1,419
Standard Oil Company (New Jersey)
Common Stock
375
The Texas Company Common Stock
200
Union Carbide Corporation Common
Stock
7,459
The Maytag Company Common Stock
L. B. Maytag, Jr., and Lucretia were divorced pursuant to decree entered October 14, 1958, by the District Court for the County of El Paso, State of Colorado, which decree reads in part as follows: In The District Court
Book…. Page…. No. 36983 STATE OF COLORADO, County of EL PASO: ss. Lucretia D. Maytag, *36 Plaintiff, v. Lewis B. Maytag, Jr., Defendant.: Decree of Divorce This cause, having been tried on October 14, 1958, upon its merits, the plaintiff being represented by Ben S. Wendelken, attorney of record, and the defendant not appearing in person or by attorney; and the Court having examined the record herein, finds that it has jurisdiction, and having considered the evidence and statements of counsel FINDS: That a divorce should be granted to the Plaintiff upon the statutory grounds of extreme and repeated cruelty, consisting of the infliction of mental suffering; therefore, It Is Ordered, Adjudged and Decreed that a divorce be granted to the Plaintiff and the marriage between plaintiff and defendant is hereby dissolved. It Is Further Ordered that the care, custody and control of the minor children, Lewis B. Maytag, III, Lucretia Doble Maytag and Alison Tower Maytag be awarded to the Plaintiff and the Defendant is granted rights of reasonable visitation; It Is Further Ordered: that it appearing to the Court that the parties have entered into an Agreement settling all questions of alimony, support money and division of property, and that said Agreement is reasonable and *37 proper and should be and hereby is approved by the Court; and That the determination of attorneys fees to be awarded by the Court is hereby reserved for further determination by the Court and hearing thereon continued until the 17th day of November, 1958. It Is Further Ordered that this Court retains such jurisdiction of this action as is conferred by law. Done and signed in open Court on October 14, 1958. BY THE COURT: /s/ John G. Reid (SEAL) Judge Lucretia married John J. Wallace, Jr., in 1959. Both before and after this marriage, the trustee made payments to her as follows: Year
Amount
1958
$18,142.89
1959
23,624.29
1960
24,412.78
1961
29,387.22
1962
24,280.01
The adjustments made to petitioners' taxable income for 1960 are explained in the Statement attached to the notice of deficiency, as follows: (a) It is determined that you failed to report income from Lucretia Maytag Support Trust on your return in the amount of $20,612.78. Accordingly, your taxable income is increased $20,612.78. (b) and (c) It is determined that dividend income is overstated $27.09 and income from rents is overstated $376.00 on your return. Therefore, taxable *38 income is decreased by $27.09 and $376.00. (d) It is determined that because of the adjustment in item(a) above, you are entitled to personal exemptions of $600.00 each for your three children, Lucretia Maytag, Lewis Maytag III, and Alison Maytag. Therefore, your taxable income is decreased by $1,800.00. The adjustments made to petitioner's taxable income for 1961 are explained in the Statement attached to the notice of deficiency, as follows: (a) It is determined that you failed to report income from Lucretia Maytag Support Trust on your return in the amount of $25,587.22. Accordingly, your taxable income is increased $25,587.22. (b) It is determined that because of the adjustment in(a) above, you are entitled to personal exemptions of $600.00 each for your three children, Lucretia Maytag, Lewis Maytag, III, and Alison Maytag. Therefore, your taxable income is decreased $1,800.00. The payments in the total amounts of $24,412.78 in 1960 and $29,387.22 in 1961 made by the Lucretia D. Maytag Support Trust to Lucretia include the lifetime annual payments of $3,800 for Lucretia and the payments of $20,612.78 in 1960 and $25,587.22 in 1961 for the support, maintenance, and education *39 of the children, Lewis Maytag III, Alison Maytag, and Lucretia Maytag. The payments of $20,612.78 in 1960 and $25,587.22 in 1961 for the proper support and maintenance of the minor children of petitioner and Lucretia, Lewis Maytag III, Alison Maytag, and Lucretia Maytag, are includable in the taxable income of petitioners in the amounts of $20,612.78 in 1960 and $25,587.22 in 1961. Petitioner herein contends that because neither the predivorce agreement nor the trust agreement executed in pursuance thereof fixes with certainty the amount or portion of a payment required by either for the support of the children referred to therein, the entire payment of trust income for each year at issue is taxable to the divorced wife Lucretia under section 71 of the Internal Revenue Code of 1954 and because thereof is deductible by the petitioner. In so contending, petitioner relies nearly entirely upon the pronouncement of the Supreme Court in Commissioner v. Lester, 366 U.S. 299, affirming 279 F. 2d 354 (C.A. 2), which had reversed 32 T.C. 1156. We think his reliance is misplaced because Commissioner v. Lester, supra, *40 appears to be distinguishable in a crucial respect from the case before us. In Commissioner v. Lester, supra, the precontingency provisions of the instrument providing for the payments in controversy were in principle the same as those in the instant case, i.e., a nondefinitive requirement for the payment by the divorced husband of a single sum to the divorced wife which, by the terms of the instrument, covered both support money for the divorced wife and also support money for dependent children. There the similarity ceases. In Lester the contingencies which would alter the identities of the beneficiaries had never occurred, while here such a contingency(remarriage of the divorced wife) had occurred and the post-contingency provisions of the controlling instruments became effective. Both the predivorce agreement and the ensuing trust instrument provide that prior to her remarriage Lucretia is to receive all the income from the trust corpus and is to provide for the ordinary support of the children plus her own support from that payment. Subsequent to her remarriage she is to receive only $3,800 per year for her own support. In addition, she is thereafter to receive *41 only such amounts from the trust income as, in the sole opinion and discretion of the trustee, is necessary for the ordinary support of the children. Any remainder of trust income is to be accumulated by the trustee for ultimate distribution directly to the children. We think the amount determined by the trustee to be necessary to defray the ordinary cost of support of the children never constituted the "periodic payment" contemplated by section 71 for we do not believe it was ever received by Lucretia as income to her. As has been said before in Eugene F. Emmons, 36 T.C. 728, affirmed 311 F. 2d 223, she was a mere conduit for such amounts. She constituted a disbursing agent for the trustee to defray such child-support expenses. The trustee, in turn, in providing funds for the support of the children, was acting as the agent of petitioner in carrying out his obligation to support such children arising from his family relationship to them. Petitioner makes the point that the moneys received by Lucretia subsequent to her remarriage for support of the children actually *42 amounted to income to her for the reason, he contends, that it was subject to her unfettered control and could be used by her, as a practical matter, either for her own benefit or that of the children. We think this argument must fail for there is no evidence before us that Lucretia at any time used such funds for her own benefit It is clear that in receiving and expending moneys received by her for the support of the children she was acting in a fiduciary capacity. Without some evidence to indicate otherwise, and petitioner has presented none, she is presumed to have used the funds for the purpose for which they were transferred to her by the trustee. Cf. Metcalf v. Commissioner, 343 F. 2d 66, affirming 42 T.C. 825. Mere conjecture will not suffice to overthrow that presumption. While Commissioner v. Lester, supra, would have been controlling here with respect to the deductibility by petitioner of lump sum amounts of support money received by Lucretia before her remarriage because the portion thereof to be used for the support of the children was not "fixed," we think amounts used by her over and above $3,800 per year thereafter were never *43 paid to her in the sense that the unsegregated lump sum amounts were received by her prior thereto. For this reason we think the "fixed" principle of Lester has no application here. Inasmuch as no issue is raised with respect to respondent's allowance of a dependency exemption for each of the children of petitioner and Lucretia, we leave the parties where we find them as to that adjustment. Decision will be entered for the respondent.