Claus A. COSMAN and Dorothy Cosman

v.

The UNITED STATES.

No. 242-68.

United States Court of Claims.

April 16, 1971.

Donald C. Young, Boston, Mass., attorney of record, for plaintiffs.

David J. Gullen, Washington, D. C., with whom was Asst. Atty. Gen., Johnnie M. Walters, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S AND PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

COWEN, Chief Judge:

This tax refund case is before the court on cross-motions for summary judgment. Plaintiff, Claus Cosman, is seeking a refund of $1,243.16 plus statutory interest resulting from the disallowance by the Internal Revenue Service on his 1961 tax return of a $2,413 alimony deduction.[1] All reference to the word "wife" in this opinion will be to Hanna Cosman, plaintiff's former wife unless the context indicates otherwise.

The essential facts of the case are stipulated. Plaintiff divorced Hanna Cosman in 1946. Prior to the divorce decree, plaintiff and Hanna Cosman had entered into a separation agreement. It provides, among other things, for the payment of alimony in quarterly installments amounting to a total of $5,000 annually.

Additionally, the agreement contains (and this is what is in issue) reciprocal covenants wherein plaintiff promised to transfer to a trust for the benefit of Hanna Cosman and the two children of their marriage an insurance policy on his life in the face amount of $100,000 and to pay to her "a sum equivalent to the premium on the policy of life insurance on his life  *  *  *  which policy  *  *  *  is to be assigned,  *  *  *  to a trust for the benefit of Hanna Cosman and the children  *  *  *" She in turn agreed to the establishment of the trust and promised that upon the receipt of the cash by her that "she will forthwith pay the current premium on the life insurance policy  *  *  *  transferred to a trust for her benefit and the benefit of the children  *  *  *"

The trust was established contemporaneously with the separation agreement, and the insurance policy was transferred to it. The trust indenture in pertinent

---

1. Dorothy Cosman, plaintiff's present wife, is a party due to the filing of a joint return; no other reference to her hereinafter will be made.

part provides that Hanna Cosman is entitled until her death or remarriage to the net income from the trust, and should it be less than $4,000, the corpus may be invaded to that extent. An amendment in 1949 to the separation agreement provides that should she receive income payments from the trust during plaintiff's lifetime, his alimony obligation will be correspondingly reduced.[2] Upon the death of Mrs. Cosman or her remarriage, the trustees were to create separate trusts of the corpus for the benefit of the children. This trust also contains the typical spendthrift provision.

The owners and beneficiaries of the insurance policy are the trustees of the Cosman trust. They each covenanted with the parties in the separation agreement "to enforce, maintain and secure the rights of his beneficiary under this agreement." However, the trust indenture absolves them of any obligation to pay or to require payment of any premium.[3]

The insurance policy has a face value of $100,000 and has an endowment feature which will provide the full face value at the end of 30 years. The policy matures in 1974.

Over the years and in 1961, the separation agreement with respect to these premium payments has been implemented by the trustees who have informed Hanna Cosman of the amount of the premium due. She in turn informed plaintiff who sent a check to her; she deposited plaintiff's check and wrote her own personal check for the premium to the insurance company. At no time has the plaintiff paid the funds directly to the insurance company, and at no time has Hanna Cosman failed to pay the amounts received from the plaintiff to the insurance company.

In 1961, the premium payment amounted to $2,413, and plaintiff took that amount as a deduction on his tax return for that year, contending that the payment was alimony.[4] On audit, the Internal Revenue Service disallowed the deduction, and the plaintiff paid the assessed deficiency of $1,037.59, plus $205.57 interest. A claim for refund was filed, and it was denied on August 25, 1966.

Thus, on these facts, the question to be resolved is whether the payment by plaintiff to Hanna Cosman for the purpose of paying the insurance premium in 1961 is deductible as alimony under Section 215 of the Internal Revenue Code of 1954.[5] Deductibility under that section depends on whether the payment received by Hanna Cosman was income to her under section 71,[6] since sec-

---

2. At no time has the trust produced income and at no time has the corpus been invaded.

3. This inconsistency might be explained by considering the difference between a duty to bring suit versus the ability to collect.

4. We are informed that Hanna Cosman has included this amount in her gross income and has filed a protective refund claim pending the decision in this case.

5. § 215. Alimony, etc., payments
   (a) General rule.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or

682. the amount thereof is not includible in the husband's gross income.

6. § 71. Alimony and separate maintenance payments

   (a) General rule.—

   (1) Decree of divorce or separate maintenance.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

tion 215 in effect incorporates the section 71 rules by reference. As a result, we find it appropriate to discuss the issue in terms of income to Hanna Cosman.

Defendant argues that the court must inquire into the economic benefit which the wife received from the 1961 payment to determine if it was income to her. Defendant's position is that Hanna Cosman was a mere conduit for the transmission of the insurance premium and that she has received no presently ascertainable economic benefit from the premium payment. Consequently, defendant says that she received no income as a result of the payment and that plaintiff is not entitled to deduct it.

On the other hand, plaintiff maintains that such an inquiry is not the test to determine the receipt of income under section 71, where as here the wife has actual command over the amount in question, the cash. It is asserted that she has dominion and control over the money and thus received income within the meaning of North American Oil v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932) and James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L. Ed.2d 246 (1961). Plaintiff also relies on the literal language of section 71 and the regulations issued thereunder.

A study of the facts, the underlying congressional intent in enacting section 71, and a review of the case law convinces us that defendant is correct and that plaintiff is not entitled to recover.

The legislative history of section 71 shows that its predecessor was enacted in 1942 "to treat such payments as income to the spouse actually receiving or actually entitled to receive them and to relieve the other spouse from the tax burden upon whatever part of the amount of such payments is under the present law includible in his gross income." S.Rep.No.1631, 77th Cong., 2d Sess., § 120 (1942). On the floor of the House, it was said: "The amount of a husband's income which goes * * * as alimony * * * is in reality not income to him at all since he has no control over it as to the use it is to be put." 88 Cong.Rec. 6377 (1942) (Remarks of Mr. Disney.) Plainly, the intent of Congress was that section 71 would tax the spouse who actually received the use and the benefit of the payments, Bardwell v. Commissioner of Internal Revenue, 318 F.2d 786 (10th Cir. 1963).

■■ The case law teaches us that a court cannot look merely to a payment of cash to a wife and say, ergo, there is income to her, even though the literal language of section 71 and the regulations issued pursuant thereto would seem to apply. Mandel v. Commissioner of Internal Revenue, 229 F.2d 382 (7th Cir. 1956), Emmons v. Commissioner of Internal Revenue, 36 T.C. 728 (1961), aff'd, 311 F.2d 223 (6th Cir. 1962), L. B. Maytag, Jr. v. Commissioner of Internal Revenue, 24 T.C.M. 1746 (1965), aff'd, 370 F.2d 914 (10th Cir. 1966), cert. denied, 386 U.S. 1034, 87 S.Ct. 1485, 18 L.Ed.2d 596 (1967). In these cases where the former wives were under a written obligation to pay funds of which they were in actual receipt to a third party (the same facts as are before us), the courts held that the husbands are not entitled to a tax deduction unless a benefit accrues to the wives. If no benefit accrues, the wives have no income and, correspondingly, the husbands no tax deduction for the payment. These holdings, we believe, are correct and in accord with the congressional purpose as set forth above.

(2) *Written separation agreement.*—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.

Moreover, the benefit to the wife must be more than "Mere peace of mind or the satisfaction which stems from knowledge that protection may be of benefit in the future * * *" Seligmann v. Commissioner of Internal Revenue, 207 F.2d 489, 494 (7th Cir. 1953). We think, as other courts have said, that the benefit must have a present ascertainable value to the wife in order for the payment to constitute income to her. Seligmann v. Commissioner of Internal Revenue, supra, Griffith v. United States, 245 F.Supp. 678 (D.C.N.J.1965), aff'd, 360 F.2d 210 (3rd Cir. 1966), Hyde v. Commissioner of Internal Revenue, 301 F.2d 279 (2d Cir. 1962).

Thus, as the above discussion shows, we cannot agree with plaintiff's contention that we need look no further than the receipt of the money by Hanna Cosman. [7]

■ Turning to the facts, we find that Hanna Cosman, acting pursuant to a written agreement in which she obligated herself to pay the money received from her ex-husband over to the insurance company, did exactly as she promised. It has not been suggested or proven that she exercised any dominion or control over the money inconsistent with her written obligation. She did not act as if she had income without any restriction as to its use and disposition. Just the contrary is true. We agree with the defendant that Hanna Cosman has been a conduit through which the payment passed—a constructive trustee.

However, this conclusion does not end the case, because we must also determine whether Hanna Cosman acquired from the payment of the premium a presently ascertainable economic benefit.

In *Seligmann, supra*, the interposition of a trust caused the court to focus on the benefit accruing to the wife from the payment of an insurance policy premium rather than upon the ownership aspect.[8] On the facts before us, we adopt the same approach. In *Seligmann*, which is very similar to this case, the husband set up a trust pursuant to a separation agreement. The trust was partly funded with life insurance policies. The beneficiaries (and apparently the owners of the policies) were the trustees. The wife's interest in the trust was an income interest subject to her surviving her ex-husband and remaining unmarried. If she remarried, she would receive a reduced portion of the income. Upon her death, her interest in the trust ceased. Seligmann v. Commissioner of Internal Revenue, *supra*, at 490–492.

The court said of her right:

\* \* \* The most that can be said is that the right which she acquired at the time the separation agreement was executed was preserved to her from year to year, including those here involved, by the husband's payment of the premiums on his life insurance policies which he was obligated to make. After the payments were made she had no different or greater right than she had before. In any

7. We note, as plaintiff has pointed out, that some courts facing the issue of the deductibility of premium payments made by a husband directly to an insurance company have intimated that the result would be changed if the wife was in actual receipt of the cash and made the payment to the company herself. Griffith v. United States, 245 F.Supp. 678 (D.C. N.J.1965), aff'd, 360 F.2d 210 (3rd Cir. 1966); Seligmann v. Commissioner of Internal Revenue, 207 F.2d 489 (7th Cir. 1953); Harold Ostrov, 53 T.C. 361 (1969). However, the facts before the courts there were different from the ones

before us, wherein the wife is obligated to turn the funds over to the insurance company.

8. Where no trust exists, the courts and at least one revenue ruling look to the ownership of the insurance policy as the key element in determining whether the payment of the premium is alimony. Rev. Rul. 70–218, 1970–1 C.B. 19, Weil v. Commissioner of Internal Revenue, 240 F.2d 584 (2d Cir. 1957), cert. denied, 353 U.S. 958, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957), Piel v. Commissioner of Internal Revenue, 340 F.2d 887 (2d Cir. 1965).

event, whatever right she had or acquired was dependent upon so many contingencies that its value could not be measured or ascertained during the taxable year. And it was a matter of rank speculation or conjecture as to whether petitioner would ever realize any economic gain. *Id.* at 494.

Hanna Cosman's stated right to receive $4,000 a year from the corpus of the trust is not a right which can be realized until the policy matures or her former husband dies. First, the language of the trust indicates that her right to the corpus is dependent upon the receipt of income by the trust, for it is a right to receive the difference between the net income of the trust and $4,000 per annum. There is nothing to indicate that the trust can earn any income until the proceeds of the policy become available for investment. Second, Hanna Cosman never demanded the annual payment of $4,000, and even if the trustees had authority to borrow on the policy, it would have been impossible for the trust to provide $4,000 each year, because the loan value of the policy was insufficient.[9] These facts indicate that neither plaintiff nor Hanna Cosman believed that her right to receive $4,000 per year from the corpus was to be exercised before the proceeds of the policy were available.

Considering the facts as a whole, we find that in 1961 Hanna Cosman had no right to the increment in the cash surrender value of the policy that was provided by the plaintiff's payment of the premium for that year. She could not alienate her interest in the trust, and it was not subject to her testamentary disposition, because the trust terminates on her death. She could not borrow on the policy. She was not the beneficiary of the policy and had no power to change the beneficiary. At best, she had a po-

tential income interest of indeterminate value, which was dependent upon her survival and marital status. The possibility of her receiving any income or benefit from the proceeds of the policy in 1961 was in the realm of conjecture. Therefore, we conclude that the payment of the 1961 premium on the policy by plaintiff did not confer on Hanna Cosman an ascertainable economic benefit.

It follows that plaintiff's claim for refund is denied. Defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied. Plaintiff's petition is dismissed.

---

9. The trust indenture does not grant specific authority to the trustees to borrow on the policy, and it is doubtful that they had a right to do so. Their right to dispose of the property of the trust is subject to the clear intent of the indenture

that an insurance policy providing for the payment of $100,000 at maturity shall remain as the corpus of the trust until the proceeds of the policy become available to the trustees.