CITIES SERVICE PIPE LINE COMPANY, a Delaware corporation, and Cherokee Pipe Line Company, a Delaware corporation, Plaintiffs in Error,

v.

J. H. STIDHAM, Defendant in Error.

No. 38860.

Supreme Court of Oklahoma.

Feb. 20, 1962.

**1008**

Withington, Shirk, Nichols & Work, Oklahoma City, E. P. Ledbetter, Oklahoma City, of counsel, for plaintiffs in error.

V. P. Crowe, Val R. Miller, Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, Purman Wilson, Purcell, Haskell Paul, Pauls Valley, for defendant in error.

JOHNSON, Justice.

The defendant in error, J. H. Stidham, hereafter referred to as plaintiff, brought suit in the District Court of Garvin County, Oklahoma, to recover damages for personal injuries against Cities Service Pipe Line Co., Cherokee Pipe Line Co., Audy Jones and Jewel Jones, his wife, plaintiffs in error, hereafter referred to as defendants.

The evidence discloses that Audy Jones was the owner of a farm in Garvin County; that he executed to Interstate Oil Pipe Line Company, November 21, 1946, a pipe line easement. Thereafter the company laid a pipe line for oil under said easement across said farm. This easement was assigned to the defendant Cherokee Pipe Line Company, and at the time of the alleged accident the line was being operated by defendant Cities Service Pipe Line Company.

The evidence revealed that on September 4, 1956, defendant Jones, the farm owner, employed the plaintiff J. H. Stidham, to go upon his farm for the purpose of plowing said land with a sub-soiler drawn by a power-driven tractor, which uprooted the soil to a depth of twenty inches; that while he was so uprooting the soil, one of the prongs of the machine engaged a six-inch pipe line owned and operated by defendants and pierced the pipe line, and while plaintiff was endeavoring to remove the prong from the pipe line he breathed the oil and gas from such pipe line and that he suffered permanent injuries therefrom.

The negligence alleged against the defendants was that they did not bury the pipe line in question at such a depth that it would not interfere with the ordinary cultivation of said land.

Demurrers of the defendants Jones to the plaintiff's evidence were sustained, and they are not parties to this appeal.

A jury trial resulted in a verdict of $17,-625.00 for the plaintiff. Defendants' motions for new trial were overruled, from which action of the court defendants appeal.

Many assignments of error are urged and discussed in the briefs, but in view of the

conclusion which we have reached, we deem it unnecessary to consider but two.

Witnesses for the plaintiff and the defendants disagree as to the depth of the pipe line in the soil. The measurements given vary from twenty inches to fourteen inches, but no witness places the depth of the line at less than this latter figure. We may assume this figure to be correct.

The evidence of plaintiff's witness was that eight inches in depth is the deepest furrow which is required for crops; that immediately beneath the usual furrow plowed there forms in the course of time a "plow sole" or hard-pan which good husbandry requires to be broken now and then so that moisture may penetrate to the subsoil. This is a special process requiring special equipment to accomplish the desired end. The evidence in this case shows that the equipment used in this case is valued at $25,000.00 and consists of a very large and powerful tractor equipped with a "sub-soiler, a ripper." It is obvious from the evidence that the machinery so required is not part of the usual farm equipment. This is further confirmed by the employment of a man who specialized in this work and who possessed the particular and peculiar machinery to perform this sort of work.

The defendant in error stresses the case of Wilcox Oil Co. v. Bradberry, Okl., 208 Okl. 546, 257 P.2d 1096, 1097, as bearing on the issues of this case. We do not find such case applicable to the case at bar. In that case there was no issue concerning the depth of the burial of the pipe line. It was not buried. The opinion states:

"* * * Where the pipe line crossed the pasture it had not been placed beneath the ground. * * *"

The case did not turn upon whether the line was buried to "such a depth as not to interfere with the ordinary cultivation of the land." It turned upon whether this provision was applicable to land which was not cultivated.

As far as we have been able to ascertain, this case presents a question of first impression in this jurisdiction. The easement which was introduced in evidence contains this language:

"The grantee, by the acceptance hereof, agrees to bury said pipelines through cultivated lands so that they will not interfere with the *ordinary cultivation* thereof, * * *". (Emphasis supplied.)

What is meant by the phrase "ordinary cultivation" italicized above? We have not been cited to nor have we found any legal interpretation of this language. Black's Law Dictionary defines the term "ordinary" to be: "regular; usual; normal; common; often recurring; according to established order; settled; customary; reasonable; not characterized by peculiar or unusual circumstances; belonging to, exercised by, or characteristic of, the normal or average individual."

Webster defines "cultivation": "The art or process of agriculture; tillage; husbandry."

Reducing these definitions to simple terms for application to the case at bar, we are constrained to hold that the phrase involved means: "The usual process of agriculture."

By no manner of reasoning can we conclude that when it is necessary to employ extra-heavy, expensive equipment to uproot sub-soil to a depth of twenty inches, the process comes within the purview of "ordinary cultivation" at the time of the granting of the easement herein, to-wit: November, 1946.

That neither Jones, the owner, nor Stidham, the plaintiff, considered this "ordinary cultivation" is evidenced by the following recital in Stidham's testimony. At the beginning of the work Jones had come to the scene of the work where Stidham had unloaded his gear. While he was getting the machinery ready, he states:

"* * * Mr. Jones came up and said he wanted to do this side of the creek; *and if it panned out, the other side*; * * *". (Emphasis supplied.)

It is evident from this that this sort of plowing was not considered by Jones to be usual, customary or "ordinary." In other words, Jones considered the portion which he was having done as experimental. If and when it proved satisfactory, he would have the balance done.

We are confirmed in the above conclusion, not only upon the ground above set out, but also because the licensee of the landowner (plaintiff) could not possibly be in a better position than the owner.

In the case of Clement v. United States Pipe Line Co., 253 Pa. 187, 97 A. 1070, 1071, the landowner granted an easement for pipe line, which grant was subject to the condition that the pipes should be so laid as not to interfere with the "usual cultivation of the premises." An action was brought for the loss of a steam shovel which was destroyed by fire when the pipe line was broken by the shovel. After determining that a statute which required the burying of such pipes twenty inches in case the right of way was secured by condemnation had no application in cases where the grant was purchased, the court considered the common law liability of the company for not burying its pipes more than sixteen inches. The court said:

"It follows then that no presumption of negligence arises from the failure of the defendant company to bury its lines to the depth required in cases of adverse taking; and therefore, if the company can be charged with negligence at all, it must be under plaintiff's second proposition, namely, that defendant was guilty of negligence in failing to give plaintiff notice and warning of the location of the pipes, and of the fact that they were sixteen inches below the surface. This can be answered only as regard is had to the situation of the parties, their relation, or want of relation, to each other, as the case may be, and the relation of each to the subject of complaint. To constitute negligence there must be a disregard of some duty or rule of conduct arising either by implication of law or created by express statute. Where there is no duty, there can be no liability. Now, what duty did the defendant company owe this plaintiff? If any, it was not one created by statute, as we have seen, but one which must be derived by implication from the circumstances we have above indicated. The parties to the action were strangers to each other, so far as the original laying of the pipes was concerned. The plaintiff had no right to interfere even in the remotest way; it was no concern of his how the pipes were laid; that was a matter that concerned nobody but the defendant and the owner of the land. The lines were constructed by the defendant company for its own exclusive use and advantage under a grant from the owner of the land, subject to the condition that the pipes should be so laid as not to interfere with the usual 'cultivation of the premises.' The owner was satisfied that, if laid at a depth of 16 inches, they would not interfere with the usual cultivation of the premises; and so it proved during the 10 years of occupancy and cultivation by Herman. Up to this point the general public, of whom the plaintiff was one, was without interest. Except as introduced upon the land by owner, or given permission by the defendant company, any one invading the premises or interfering with the defendant company's lines would have been a trespasser. But here the situation changes. In 1910 title to the land passed from Herman to the Bethlehem Steel Company. This company, desiring to utilize the land for other purposes than 'usual cultivation,' proceeded to erect thereon a coke oven. To accomplish this extensive excavation was required. The work was committed to plaintiff, a

contractor, who entered upon the premises with his machines as licensee of the then owner. He was no longer an outsider and stranger, but, being there by right, he was in a relation that raised a clear implication of duty on the part of some one, in view of the character of the work he was to do, and the operation of the machine he was employing to accomplish it, and in view of the further fact that there was nothing on the surface to indicate the location of the pipes, to inform him with respect to it so that collision might be avoided. It is not for us to say whose duty that was. It is enough to know for the purposes of this case—and that is all that we are inquiring about—that the duty did not rest on this defendant company, except as it is made to appear that it had notice or knowledge of the fact that the then owner of the premises proposed to utilize the land where the pipes were laid for other and different purposes than for the cultivation of the soil, and for purposes which might reasonably require other signs and markers to indicate the exact location of the pipes in order to avoid contact with them. Had the then owner of the farm, the steel company, undertaken the work of excavation on its own account, by its own workmen and its own machinery, without notice to this defendant, the steel company having succeeded to just such rights as had been in Herman, and being chargeable with the knowledge of the true location of the pipes, and the accident had occurred under such conditions, it could hardly be contended that the defendant company could have been held liable for the loss. How is the situation changed by the fact that the accident occurred to its own licensee, who for the time being was the steel company's representative or agent? The ninth conclusion of law by the referee correctly states the law with respect to this point. It reads as follows:

" 'The plaintiff is chargeable with the notice concerning the location of the pipe lines in the same measure, and to the same extent, as notice was brought home of its existence and location to the Bethlehem Steel Company, his licensee.'

"And, the finding of fact being that the Bethlehem Steel Company had notice before it acquired title of the location of the pipe line, there remains no ground for imposing liability on the defendant company."

In the above case the steel company was the landowner who purchased with knowledge of the pipe line. Here Jones, the owner, was the party who made the grant, hence his means of knowledge was greater than that of the steel company. It will be noted that in the above quotation the court emphasizes the position of the owner.

"The lines were constructed by the defendant company for its own exclusive use and advantage under a grant from the owner of the land, subject to the condition that the pipes should be so laid as not to interfere with the usual 'cultivation of the premises.' The owner was satisfied that, if laid at a depth of 16 inches, they would not interfere with the usual cultivation of the premises; and so it proved during the 10 years of occupancy and cultivation by Herman. * * *"

So in the instant case the line was constructed in 1947. The trial was held in March, 1959, and the record discloses no objection by the owner with the depth of the pipe line or any interference by this with "ordinary cultivation." As said in the above quotation, "The plaintiff is chargeable with the notice concerning the location of the pipe lines in the same measure, and to the same extent, as notice was brought home of its existence and location to the Bethlehem Steel Company, his licensee." The steel company was, of course, the owner of the land and in the same position as Jones in the instant case.

We are therefore of the opinion and hold that the trial court erred in overruling the defendants' demurrers to the evidence and the motions for directed verdict.

The judgment of the trial court is reversed with directions to enter judgment for defendants.

BLACKBIRD, V. C. J., and DAVISON, HALLEY and BERRY, JJ., concur.

JACKSON and IRWIN, JJ., concur in result.

WILLIAMS, C. J., dissents.