**Peter I. and Elaine M. KALLANDER**

v.

**The UNITED STATES.**

**No. 112–73.**

United States Court of Claims.

Dec. 17, 1975.

**1132**

Peter B. Sang, Portland, Me., attorney of record, for plaintiffs.

William Kalish, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant, Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before LARAMORE, Senior Judge, and KASHIWA and BENNETT, Judges.

## OPINION

**PER CURIAM:**

This case comes before the court on plaintiff's exceptions to the recommended decision filed by Trial Judge Louis Spector on March 19, 1975, pursuant to Rule 134(h), having been submitted to the court on the briefs without oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, as hereinafter set forth, it hereby affirms and adopts the same as the basis for its judgment in this case. It is therefore concluded as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF TRIAL JUDGE

SPECTOR, *Trial Judge:* This is one of those tax cases which involves a small sum of money but a large issue. It is an issue which has heretofore been considered by several circuits of the U. S. Court of Appeals [1] and by the Supreme Court.[2] Those decisions provide the necessary guidelines for disposition of this case, on its particular facts.

Plaintiff,[3] during the tax year in question (1968), was a commercial airlines pilot employed by Northeast Airlines,[4] a trunk carrier then 11th in size in the United States. Its route structure extended from Montreal, Canada, to Miami, Florida, and to intermediate points. Plaintiff resided in Southborough, Massachusetts, where he had grown up, and he was based at Logan International Airport, Boston, Massachusetts, about 30 miles from his residence.

This case involves the deductibility[5] for income tax purposes of the additional cost (by private automobile over public transportation) of commuting between residence and airport. Defendant has disallowed the deduction of any part of plaintiff's commuting costs on the grounds that they are "personal, living, or family expenses." [6]

1. *Coker v. Commissioner*, 487 F.2d 593 (2d Cir. 1973); *Fausner v. Commissioner*, 472 F.2d 561 (5th Cir. 1973); *Tyne v. Commissioner*, 385 F.2d 40 (7th Cir. 1967), and *Sullivan v. Commissioner*, 368 F.2d 1007 (2d Cir. 1966).

2. *Fausner v. Commissioner*, 413 U.S. 838, 93 S.Ct. 2820, 37 L.Ed.2d 996 (1973). *See also,* case note on *Fausner*, 26 Baylor L.Rev. 262.

3. Referring to Peter I. Kallander. Elaine M. Kallander is a party solely because she filed a joint income tax return with her husband.

4. Since merged into Delta Airlines.

5. As a trade or business expense under Int. Rev.Code of 1954, § 162 (26 U.S.C. § 162).

6. 26 U.S.C. § 262 (Int.Rev.Code of 1954).

As a condition of his employment, plaintiff was required to use and maintain certain manuals, tools and other equipment. Some were required while piloting the aircraft, and depended upon the type of aircraft being flown, and upon whether plaintiff was serving as captain, copilot or flight engineer.[7] It was a further condition of his employment that plaintiff study and update his various manuals and related equipment to maintain his personal qualifications and proficiencies. In addition, plaintiff was subject to spot tests by his employer and by the FAA at irregular intervals to insure that he was maintaining the requisite flight skills under normal and abnormal conditions.

Because plaintiff's employer did not maintain storage or study facilities at Logan adequate for updating flight manuals, plaintiff kept his manuals and other equipment in an office area maintained in his home, where they were readily accessible for study and assembly for a particular flight. These items, therefore, had to be carried back and forth between residence and Logan in a flight bag weighing 26 pounds.

In addition, plaintiff was required to carry certain street clothing and other personal effects for use while not in flight, because use of his airline uniform while off duty was restricted. The amount and type of such clothing varied with the geographical destination of the flight, and the length of the layover at destination. The average weight of that suitcase was 24 pounds. In summary, plaintiff was regularly required to carry a total of about 50 pounds of equipment and clothing between home and airport.

To some extent plaintiff determined his working hours and his flight assignments under a procedure whereby pilots "bid" for available flight schedules based on personal preference coupled with seniority. Plaintiff testified that during 1968 his bids were predicated on varying factors, but were primarily motivated by an interest in higher earnings, a desire to fly the most sophisticated aircraft (which is closely related to higher earnings), and an occasional need to secure certain days or weekends off as requested by his wife.

Plaintiff was required, subject to disciplinary action, to report 1 hour prior to departure for necessary preflight check-in. He could be asked to report for special flying assignments, called "reserve" assignments, on as little as 3 hours' notice, thus allowing him as little as 2 hours to prepare and commute to the airport. In many instances, he received much longer notice (up to 24 hours) of reserve flying assignments.

In the tax year 1968, plaintiff made a total of 82 trips between residence and Logan, 74 of them on regular flying assignments requiring transportation of the earlier described flight equipment and personal items. He seeks an income tax deduction as to those 74 trips, for the difference in cost between commuting by private automobile[8] and by public transportation[9] on the grounds that the use of private automobile was required by the need to carry that equipment and baggage.

On the eight remaining trips to Logan in 1968, for flight training purposes not requiring the transport of equipment and baggage, plaintiff also used his private automobile, and he could recall no trip by public transportation during 1968. He explains this by noting that his commuting pattern had been established by the need to use his car when burdened with equipment on the far more numerous flying assignment trips to the airport.

The available public transportation consisted of the following. In 1968, there was a local bus stop about 500 feet from plaintiff's residence. That bus system provided service on a regular basis to a shopping center in Framingham,

7. In 1968, plaintiff flew four different types of aircraft, and in various positions on each aircraft.

8. At 10 cents per mile, $3 each way, plus tolls.
9. $1.82 each way.

Massachusetts, about 7 miles away. The service originating near his residence was on a regular basis at intervals ranging from every 15 minutes to every hour, depending on the time of day. Plaintiff's wife could have driven him to Framingham, if necessary, to catch the next bus, which went from Framingham to the airport, or to downtown Boston, sometimes as an express and sometimes not, all depending on the schedule.

These large buses from Framingham to Boston had the typical storage bins underneath for baggage, so that a bus operator stopping for a passenger carrying baggage, would have to disembark and use special handles to open the storage bins and load or unload a passenger's bags. Plaintiff was concerned that a driver might not always stop for a baggage-laden passenger, especially in inclement weather.

From downtown Boston it was a 10-minute walk to the Park Square subway terminal, and a 5-minute subway ride to the Government Center terminal. From there it was a subway ride to the airport, followed by a shuttle bus ride to the Northeast Airlines terminal. About 25 percent of Northeast's flights departed before 9 a. m.

It was plaintiff's testimony that the travel time from his home to the Northeast terminal at Logan by the above-described public transportation system would be approximately 1 hour and 10 minutes during nonrush hour periods. He similarly estimated that the normal driving time by private automobile, during corresponding periods, would be from 45 minutes to 1 hour and 10 minutes, depending upon traffic congestion on the expressways and in the tunnels leading to Logan airport. The last portion of the trip, from downtown Boston to the airport, was said to be faster by subway than by automobile.

When plaintiff arrived at the airport in his private automobile, he parked in an area reserved for airline employees about three-fourths of a mile from the terminal area, and took a shuttle bus to the terminal. This shuttle bus also operated on a regular schedule but, unlike the one available to those using public transportation, it had been specially adapted for flight personnel and their baggage, by removal of seats in the front of the bus.

Plaintiff testified that he declined to use the public transportation system above-described for any of his 74 regular flying assignments because it was impractical to carry his heavy equipment, tools and other baggage to the bus stop, and on and off the buses and subway trains, and to stow them in a separate luggage compartment on the large intercity bus. He states that he otherwise *could* have used public transportation on many flight assignments, and that he *could* have bid for monthly flight schedules so as to permit the use of such public transportation; but he did not testify that he *would* have done so, absent the baggage problem.

As the cases show, this is a key issue because we must search out the "but for" cause which triggered the use of a private automobile in this case. On that point plaintiff testified with commendable candor that if he had not been required to carry equipment, tools and baggage he "could only speculate that I would take it [public transportation] sometimes; as to how many times, or what percentage, I—it would be speculative, and I don't know how much value it would be to you; I could say a third of the time perhaps—I don't know. I wouldn't have any business at the airport if I didn't have my tools and instruments; they wouldn't let me on the airplane."

It is equally speculative whether the availability of public transportation would have been a significant factor motivating plaintiff's bids for flight assignments, had he not been burdened with equipment, tools and other baggage. Under the circumstances which actually existed, we know that he was motivated principally by the prospect of higher earnings and the opportunity to fly more sophisticated aircraft. Ordinarily these would be more important factors than the availability of public transportation.

Plaintiff owned two automobiles during 1968, a period when he and his wife were the only licensed drivers in his household. Here again one can only speculate whether the second car was maintained because of plaintiff's special commuting problems, or for personal convenience.

In summary, plaintiff has had the burden of describing an available public transportation system, so difficult and inconvenient as to render it impractical for a commuter laden with the above-described equipment and baggage; but at the same time so convenient and practical that it would be the preferred mode of travel by a commuter not so laden. That is a difficult burden, and it has not been met.

■ The conclusion can fairly be drawn from the record that plaintiff would have commuted between residence and airport by private automobile, and not by public transportation, whether or not he was obliged to carry approximately 50 pounds of equipment, tools and other baggage as a condition of employment. It is concluded that travel by private automobile was selected because it offered greater comfort, convenience, reliability and flexibility in meeting mandatory schedules.

Once it is concluded that plaintiff would have employed his private vehicle to commute in any event, the carrying of his job-required equipment, tools and baggage in the car involved no additional expense to him, and it is not deductible. That is the teaching of the Supreme Court's opinion in *Fausner*,[10] particularly when read in the light of the decisions which preceded and followed it.

The taxpayer in *Fausner* was also a commercial airlines pilot, who regularly commuted by private automobile. He sought to deduct the entire cost of commuting, not just an allocable portion, as

in this case. The Tax Court and later the Court of Appeals disallowed the deduction *in toto*. The record indicated "that Fausner would have driven to work even if it had not been necessary to carry the bags, *since no convenient public transportation was available.*" [11] (Emphasis supplied.)

*Fausner* (originating in the Fifth Circuit), specifically declined to follow the rule announced in *Sullivan* (Second Circuit), and *Tyne* (Seventh Circuit),[12] to the effect that some allocable portion of the expenses incurred should be allowed as a deduction.

As stated in *Fausner*:

* * * This is not a situation where a proper allocation can be made by any analytical determination of actual cost of the deductible component. * * *

* * * * * *

The short answer is that since he introduced no evidence that he incurred any expense *in excess of nondeductible commuting expense* in transporting his two bags, Fausner failed to carry the burden of establishing his right to the deduction claimed. * *

* * * * * *

* * * Since the record shows that Fausner *would have driven his car to and from his place of employment anyway*, we cannot find that he is entitled to what would amount to special relief which would distinguish him from other taxpayers because of the mere fortuity that he placed the bags he was required to carry in the trunk of his commuting vehicle. Congress has determined that all taxpayers shall bear the expense of commuting to and from work without receiving a deduction for that expense. This common burden cannot be negated for

**10.** Note 2 *supra*.

**11.** Note 1 *supra*, 472 F.2d at 562.

**12.** Note 1 *supra*.

a particular taxpayer by the happenstance that he must carry incidentals of his occupation with him. [Emphasis supplied.] [13]

In affirming the Fifth Circuit in *Fausner*, the Supreme Court noted at the outset "that petitioner would have commuted by private automobile regardless of whether he had to transport his two bags." [14] It concluded:

* * * We cannot read § 262 of the Internal Revenue Code as excluding such expense from "personal" expenses because by happenstance the taxpayer must carry incidentals of his occupation with him. Additional expenses may at times be incurred for transporting job-required tools and material to and from work. Then an allocation of costs between "personal" and "business" expenses may be feasible. But no such allocation can be made here. [Footnotes omitted.] [15]

It is clear that the intent of the Court is that "no such allocation can be made" when, as here (and as in *Fausner*), the taxpayer "would have commuted by private automobile regardless of whether he had to transport his two bags." The Second Circuit has since modified its rule in the *Sullivan* case to conform with *Fausner*.[16]

■ In summary, the mere availability or adequacy of a less expensive public transportation alternative, is insufficient to trigger an allocation.[17] It must be shown that the need to carry necessary tools and equipment was the primary reason for the taxpayer's failure to avail himself of that public transportation, and the reason for his using private automobile instead. The tools and equipment are not the "but for" reason for using private automobile when the taxpayer would have commuted by that method in any event.

It follows that plaintiff is not entitled to recover, and his petition is dismissed.

---

**13.** 472 F.2d at 562–63. In *Sullivan*, note 1 *supra*, the taxpayer lived on Staten Island and worked for a construction contractor at various sites in Manhattan, Brooklyn and Staten Island. He carried a 32-pound bag of tools which he had to take back and forth each day. He also had a bad knee which rendered difficult the walking and standing required by public transportation. The Commissioner had conceded that a taxpayer may deduct reasonable driving expenses *"if* he can show that he would *not* have driven his automobile to work if it had not been necessary to take his tool bag." [Emphasis supplied.] 368 F.2d at 1008. But the court in *Sullivan*, confronted with the classic case of a heavily laden Manhattan commuter, concluded further:

" * * * Even if taxpayer *would have driven* to and from work had it *not* been necessary to transport his tools, he ought to be allowed to deduct *that portion* of his reasonable driving expenses which is allocable to the transportation of tools.

    \*    \*    \*    \*    \*    \*

" * * * For example, where a journey is made *primarily* for business but partly for personal reasons, its expenses may be allocated between the two purposes." [Emphasis supplied.] 368 F.2d at 1008–09.

    *Tyne* (note 1 *supra* ) was in accord with *Sullivan*.

**14.** 413 U.S. 838.

**15.** 413 U.S. at 839.

**16.** *Coker,* note 1 *supra*.

" * * * *Fausner* clearly overrules *Sullivan*, and holds that none of the commuting costs are deductible when, as in this case, the taxpayer would have used his automobile in any event. * * *" 487 F.2d at 594.

**17.** *See & cf. Tyne*, 385 F.2d at 42–43.