ROCCO & ELIZABETH DOLCE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dolce v. Commissioner
Docket No. 12034-77.
United States Tax Court
T.C. Memo 1980-35; 1980 Tax Ct. Memo LEXIS 551; 39 T.C.M. (CCH) 1008; T.C.M. (RIA) 80035; February 6, 1980, Filed *551 Rocco Dolce, pro se. Kenneth J. Rubin, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $760.96 in petitioners' Federal income tax for the taxable year ended December 31, 1975. The issue before us is whether petitioners are entitled to a deduction of $3,016, representing petitioner Rocco Dolce's expenses for operating his atutomobile between his home [1] and a construction site where he worked, either because (a) his employment at such site was temporary rather than indefinite or (b) he had to transport his tools to work. FINDINGS OF FACT Petitioners are husband and wife who, at the time of filing the petition herein, resided at 112 South Oakland Avenue, Runnemede, N.J. They filed a joint income tax return for the taxable year in question. Elizabeth Dolce is a petitioner solely by reason of the filing of such joint income tax return for 1975. Therefore, the term "petitioner" will hereinafter refer solely to Rocco Dolce. Petitioner has lived in Runnemede all his life. He is an electrician and belonged *552 to the International Brotherhood of Electrical Workers, Union Local No. 592, Vineland, N.J., during 1975. Petitioner was employed by United Engineers and Constructors, Inc., on the construction site of a nuclear power plant located near Salem, N.J. (hereinafter the construction site) continuously for more than three and one-half years, from October 9, 1972, until April 16, 1976. During this period, he was not employed at any other location. Although the number of electricians employed on the construction site fluctuated, electricians were continuously employed there from October of 1968 through the date of trial on April 30, 1979, a period exceeding ten years. When petitioner began work at the construction site, the construction of the first reactor was about 50-percent completed. By 1975, it was about 80-percent completed. In 1975, the construction of the second reactor still remained only 50-percent to 55-percent completed. The one-way distance between petitioner's residence in Runnemede, N.J., and the construction site is approximately 50 miles. Each working day, during 1975, petitioner traveled to and from his residence and the construction site by his personally owned *553 automobile and transported tools which he was required to bring to his job. The driving time was between 45 minutes and one hour. Petitioner had attempted to make car pool arrangements but was unsuccessful because of the problem of tools. Petitioner's normal working hours were from 8:00 a.m. to 4:30 p.m. Petitioner worked overtime and some Saturdays. He could be penalized by loss of pay and possible termination or disciplinary action for failing to report for work on time. If petitioner had not driven his automobile to and from his residence and the construction site, he would have taken two buses each way, which ran from Runnemede, N.J., to Woodbury, N.J., and Woodbury, N.J., to Salem, N.J., and back, respectively. Travel by bus would have taken about one hour. The bus service between Runnemede, N.J., and Woodbury, N.J., consisted of only one or two buses each morning and each afternoon. Petitioner would have had to catch the bus at 5:45 a.m. in the morning to get to work. If petitioner had missed the bus leaving Salem in the afternoon or evening, he would have had to call his wife to pick him up. The construction site of the nuclear power plant was located 8 to 10 *554 miles from the town of Salem, N.J. No mode of public transportation existed between the town of Salem and the construction site during 1975. If he had not driven his automobile, petitioner would have had to try to get a ride from Salem with other workers at the construction site. OPINION Initially, we must determine whether petitioner's employment was temporary or indefinite in order to decide whether petitioner was "away from home." Respondent has conceded that, if we find that it was temporary, the expenses are an allowable deduction as an exception to the general rule relating to the nondeductibility of commuting expenses. See also McCallister v. Commissioner, 70 T.C. 505, 508 (1978); Norwood v. Commissioner, 66 T.C. 467, 469 (1976). We see no purpose to be served in repeating the litany of the decided cases on the issue of temporary versus permanent or indefinite. See, e.g., Norwood v. Commissioner, supra.We are satisfied that, however temporary petitioner's assignment to the construction site may have been at its inception in 1972, by the taxable year in question it had become indefinite. In this context, petitioner's *555 automobile expenses were commuting expenses and consequently non-deductible. McCallister v. Commissioner, supra., Norwood v. Commissioner, supra.Nor does the record herein reveal a sufficient likelihood that petitioner might have been laid off or otherwise had his employment interrupted to require a contrary conclusion. Frederick v. United States, 603 F.2d 1292 (8th Cir. 1979); Blatnick v. Commissioner, 56 T.C. 1344 (1971). With respect to the transportation-of-tools issue, respondent concedes that, under his policy as reflected by Rev. Rul. 75-380, 1975-2 C.B. 59, petitioner would be entitled to deduct, for the taxable year 1975, his automobile expenses if we find that he would not have driven to the construction site "but for" the requirement that he had to transport the tools. [2] Although the petitioner testified that, because of the tools, "I was forced to use my own transportation to seek employment," we are satisfied that, on the basis of the objective facts revealed by the record herein, the "but for" test was not satisfied. By petitioner's own admission, car pool arrangements were *556 not in the cards. As far as bus service is concerned, the record reveals clearly that, without regard to the tools, it did not provide a realistic alternative means of transportation. The infrequency of the service between Runnemede and Salem and the lack of public transportation between Salem and the construction site made such mode of travel awkward and unreliable, particularly in light of the potential sanctions for failure to report to work on time. In short, we conclude that petitioner would, in any event, have driven his automobile from his home to the construction site. See Kallander v. United States, 208 Ct. Cl. 557, 565, 526 F.2d 1131, 1136 (1975). Nor is there evidence in the record sufficient to permit us to apply the additional-expense rule. See Fausner v. Commissioner, 413 U.S. 838, 839 (1973). Keeping in mind that the burden of proof is on the petitioners (see Rule 142(a), Tax Court Rules of Practice and Procedure), we hold that *557 respondent's disallowance of petitioner's automobile expenses should be sustained. [3]
Decision will be entered for the respondent . Footnotes
1. Respondent has not questioned the amount of the deduction.↩
2. Rev. Rul. 75-380 states that, for taxable years subsequent to 1975, the additional expense test articulated in Fausner v. Commissioner, 413 U.S. 838↩ (1973), applies.
3. With one exception, this Court has held that taxpayers situated similarly to petitioner, i.e., who worked at the same construction site, were not entitled to deduction for automobile expenses. Randazzo v. Commissioner, T.C. Memo. 1977-303 (tools); Radocy v. Commissioner, T.C. Memo. 1977-282 (tools); Crouch v. Commissioner, T.C. Memo. 1977-60 (tools and indefinite employment); Manupello v. Commissioner, T.C. Memo. 1976-237 (tools); McGraw v. Commissioner, T.C. Memo. 1976-233 (tools); Reese v. Commissioner, T.C. Memo. 1976-198 (tools). The exception is Grayson v. Commissioner, T.C. Memo. 1977-304↩ (tools), but that case turned on the findings of the Court based upon the particular record in that case.