JOHN GREENWAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RespondentGreenway v. CommissionerDocket No. 208-77.United States Tax CourtT.C. Memo 1980-97; 1980 Tax Ct. Memo LEXIS 482; 40 T.C.M. (CCH) 24; T.C.M. (RIA) 80097; March 31, 1980, Filed John Greenway, pro se. Jeff P. Ehrlich, for the respondent. TANNENWALDMEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $1,104.00 in petitioner's income tax for the taxable year 1975. By way of an amended return, petitioner claimed an overpayment of $338.83. 1 Concessions having been made, the issues*485 remaining for decision are whether petitioner is entitled to a variety of deductions. FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. The stipulation of facts, together with the accompanying exhibits, is incorporated herein by this reference. Petitioner was a resident of Boulder, Colo., at the time he filed his petition herein. He filed his original individual income tax return, Form 1040, and an amended return, Form 1040X, for the year 1975 with the Internal Revenue Service Center at Ogden, Utah. In 1975, petitioner was a professor of authropology at the University of Colorado, specializing in the field of ethnomusicology. Petitioner was also an author. He had written several published books and numerous articles and was working on at least one book, entitled The American Tradition, in 1975. Petitioner bought a house for $36,000 in 1975, which he lived in for part of that year. Petitioner did substantial amounts of professional writing and preparation for classroom teaching in three rooms in his home during the taxable year in question. He used three rooms in order*486 to keep separate projects on which he was working simultaneously and did not use those rooms for any other purpose. The three rooms were petitioner's home office and constituted one-third of the area of the house. Petitioner also had an office at the university. Petitioner had a large collection of books in his home related to his university teaching and other professional activities. Petitioner constructed a nine-shelf built-in bookcase of white pine, 12 feet long and 1-1/2 feet deep, in his living room to hold that part of his professional library dealing with music and musical instruments. Approximately 20 of petitioner's books were damaged in the spring of 1975 by the seepage of rain into the apartment where he was living at the time. Petitioner had deducted the cost of the damaged books as a business expense for income tax purposes at the time he purchased them. Petitioner sometimes brought to his classes to illustrate his lectures stone implements found in Australia and tape recorders or a phonograph for his ethnomusicology students to listen to and compare ethnic songs. Petitioner had a collection of records of folk music of different cultures. He would record*487 music from his records onto tapes to facilitate comparisons of songs by his students and to eliminate the need to transport his records to his classes, thereby avoiding possible damage. The University of Colorado deducted $60 from petitioner's salary in 1975 as a fee for use of parking facilities at the University while teaching. On October 29, 1975, petitioner and a woman named Frances Snow bought a Toyota Land Cruiser automobile. They were registered as joint owners of the car. Petitioner expended $118.10 in 1975 for maintenance, insurance, taxes, and tags for that automobile. Petitioner broke his back in the early part of 1975 and was compelled to take sick leave from his university teaching for the remainder of the year. An academic year at the University of Colorado consists of 181 days, exclusive of weekends. As a result of his injury, petitioner was unable to do as much professional writing as he had in previous years and his earnings from such writing were less than his average in other years; Petitioner was involved in an automobile accident in 1975 when his back injury interfered with his ability to operate his car's brakes. He was charged erroneously with*488 driving under the influence of alcohol. Petitioner paid $1,400.64 to Western Cine in 1975 for the production of the negative and sound track of a 16 millimeter film called "At the Edge of the Old Stone Age." From this master film produced by Western Cine, petitioner could have additional prints made, which he intended to sell or rent to universities and other educational groups. Petitioner did not sell or rent, and did not expect to sell or rent, any copies of the film in 1975, because the brochure prepared for the purpose of soliciting offers had not yet been mailed to prospective customers. Petitioner married Ruth Greenway (Ruth) in 1948. They had one child. They were divorced prior to 1975. A separation agreement between them, signed on December 31, 1965, provided in part: 6. There now exists a policy of life insurance upon the life of the minor child of the parties. Husband agrees that he will, during the minority of such child, maintain and keep current all payments of premiums due upon such life insurance policies, and will, upon the date of the attainment of majority of such child turn over ownership of such policy of insurance to said child. 7. Husband now*489 possesses a paid-up policy of life insurance with an approximate face value of $1,500.00, and a Metropolitan health insurance policy containing a death benefit of $5,000.00. Husband agrees to immediately irrevocably name Wife as the beneficiary of both of such policies. Husband further owns a TIAA Term Insurance policy upon his life with a decreasing death benefit. Husband agrees to irrevocably name Wife as beneficiary of such payment, Wife to accept such payment as trustee for the use and benefit of the minor child of the parties. Upon the attainment of majority by such child, Wife shall have the privilege to such rights to said child [sic], or to keep such rights in her own name as she, in her full discretion, shall determine. Husband shall make such payments on each of the policies herein mentioned so as to keep each policy current and paid up. Husband shall furnish to wife all necessary and proper proofs that he has done the things required within this paragraph. Prior to 1975, petitioner was also married to and divorced from Joan Greenway (Joan). An insurance policy with the The Prudential Insurance Company of America Prudential), with certificate number 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 and*490 an effective date of June 1, 1972, named "Joan M. Greenway, Wife" as dependent and beneficiary for employee death benefits. Petitioner was the insured employee under this policy, which was a group policy of which the University of Colorado was the policyholder. A Prudential policy with the same certificate number but an effective date of April 1, 1977, named Ruth as the beneficiary for employee death benefits. Joan was also the beneficiary and petitioner the insured under an Aetna Life Insurance Company policy, Policy No. SRX-95423, certificate number Co 2529, with an effective date of April 15, 1973. OPINION Issue 1. Home Office DeductionOn his original income tax return, petitioner claimed deductions in the aggregate amount of $1,817.01 for various expenses in connection with a home office, including rent, mortgage interest, fire insurance, real estate taxes, and utilities, of which respondent allowed all but $435, which petitioner claimed as the cost of a home office bookcase. See Issue 2, infra, pp. 8-9. Petitioner claimed on his amendment return, and seeks here, an additional deduction of $201.40 for depreciation on the portion of his home used as an office. *491 Respondent argues that petitioner has not proven that he had home office expenses in excess of those previously allowed. We are convinced by petitioner's testimony and other evidence of the work which he did in his home that use of a portion of his home as an office was a necessity, at least in his capacity as a professional writer, and probably in his capacity as a university professor as well, and that such portion of his home did constitute a place of business. See and compare Meehan v. Commissioner, 66 T.C. 794, 806-807 (1976). See also, section 1.262-1(b)(3), Income Tax Regs. Respondent himself apparently concluded as much in allowing the other home office deductions claimed by petitioner. We consider the depreciation deduction claimed by petitioner to be reasonable in amount 2 and, after reviewing the record carefully, we are convinced it is not duplicative of the other home office expense deductions previously allowed by respondent. We therefore hold that petitioner is entitled to a deduction of $201.40 for depreciation on his home office. *492 Issue 2. Home Office BookcasePetitioner claims a deduction for the cost of a bookcase in his home office or, in the alternative, for depreciation on such bookcase.We note, at the outset, that we agree with respondent's position that if petitioner is entitled to any deduction in respect of the bookcase, it is only for depreciation thereon and not for its entire cost, since petitioner testified that the bookcase had a useful life of approximately 10 years. Section 263(a); 3section 1.263(a)-2(a), Income Tax Regs. We conclude, however, that petitioner may not deduct any amount for depreciation on the bookcase because he has not established his basis therein. Petitioner has the burden of proving the elements necessary to establish the amount, if any, of the depreciation deduction to which he is entitled. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. On his*493 original return, petitioner claimed a deduction of $435 for a bookcase in his home office. This deduction was disallowed in its entirety by respondent in the notice of deficiency on the ground that the bookcase had a useful life in excess of a year and had to be capitalized and depreciated over that useful life. On his amended return, petitioner accepted respondent's position that the bookcase had to be depreciated and deducted the amount of $137, based on a 200-percent declining balance method of depreciation, assuming a 7-year useful life for the bookcase. 4 At trial, petitioner testified that he himself constructed the bookcase in question out of white pine, that the bookcase had a useful life of 10 years, that the lumber cost him $137, and that the $435 cost stated on his original and amended returns was erroneous. He offered no evidence other than his testimony to substantiate the cost of materials used in construction. In his reply brief, petitioner alleged*494 for the first time that deductions for two different bookcases, one which he constructed at a cost of $137 and one which he bought for $435, were involved. In view of the repeated inconsistencies in petitioner's statements, we are unable to determine, or to approximate (see and compare Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930)), what, if any, basis petitioner had in his bookcase or bookcases, and we conclude that petitioner has failed to carry his burden of proof on this issue. Issue 3. Casualty LossPetitioner seeks a casualty loss deduction for books damaged by the leakage of rain into his home. 5 Petitioner admitted at trial that he had previously deducted, as a business expense, the cost of the damaged books. *495 In general, the measure of a casualty loss is the difference between the fair market value of the property immediately preceding the casualty and its fair market value immediately thereafter, limited however to the adjusted basis of the property. Section 165(b); section 1.165-1(c)(1), Income Tax Regs. See Helvering v. Owens, 305 U.S. 468 (1939). Since petitioner had previously deducted the costs of the damaged books for income tax purposes, his adjusted basis in them was zero. Section 1.1016-2(a), Income Tax Regs. It is clear, therefore, that petitioner is not entitled to a casualty loss deduction. 6 See section 1.161-1, Income Tax Regs, which provides that -- Double deductions are not permitted.Amounts deducted under one provision of the Internal Revenue Code of 1954 cannot again be deducted under any other provision thereof. Issue 4. Parking FeesPetitioner seeks*496 a deduction for a $60 fee which he paid in 1975 to the University of Colorado for parking while at work. Petitioner testified that he could not take public transportation to work and was compelled to drive, because he had to carry stone implements, tape recorders, and a phonograph to illustrate his lectures, and that, even if a healthy person could have transported this equipment via public transportation, petitioner's back injury made it impossible for him to do so. 7The parking fee paid by petitioner was part of his cost of commuting to work. It is well established that commuting costs are nondeductible personal expenditures. Commissioner v. Flowers, 326 U.S. 465 (1946); section 262. Although a limited exception to the rule of nondeductibility of commuting expenses exists with respect to costs incurred*497 for transportation of tools required by a taxpayer's job, see Fausner v. Commissioner, 413 U.S. 838 (1973), petitioner has the burden of establishing that exception's applicability, Rule 142(a), Tax Court Rules of Practice and Procedure, and the evidence he has offered is insufficient to show that the deduction he seeks falls within the limits of that exception. Petitioner has failed to show that he would not have driven to work "but for" the items which he transported or that he incurred any additional expenses in order to transport those items, see Fausner v. Commissioner, supra at 839; Kallander v. United States, 208 Ct. Cl. 557, 526 F.2d 1131 (1975); Feistman v. Commissioner, 63 T.C. 129, 135 (1974), 8 since he offered no evidence on the accessibility of other modes of transportation. Moreover, the record leaves us with some doubt as to whether the equipment and implements carried by petitioner to his lectures were required by his work or were merely used and transported by petitioner as a matter of personal preference and whether (or how frequently) he was required to transport them rather than store*498 them in his university office. Additionally, even if petitioner had furnished evidence (which he did not) tending to show that he drove his automobile to work because of his back injury, and would not have otherwise done so, his parking fee would, nevertheless, be a nondeductible personal expense. Commuting costs incurred because of a taxpayer's physical condition are personal, not business expenses. Donnelly v. Commissioner, 262 F.2d 411, 412 (2d Cir. 1959), affg. 28 T.C. 1278 (1957); Bruton v. Commissioner, 9 T.C. 882, 886 (1947). Nor are such costs deductible as medical expenses. Donnelly v. Commissioner, supra at 413; Buck v. Commissioner, 47 T.C. 113, 119 (1966).*499 Issue 5. Automobile Expense DeductionPetitioner claimed on his amended return, and seeks herein, a business expense deduction for automobile expenses of $1,996.10, including $1,878 in depreciation and $118.10 of other expenses. Respondent stipulated that petitioner expended $118.10 for maintenance, insurance, taxes, and tags for the automobile in question, a Toyota Land Cruiser, but disputes the deductibility of those expenses and the depreciation expense, as well as the amount of depreciation as calculated by petitioner. Respondent is clearly correct in his assertion that the amount of depreciation claimed by petitioner is in excess of that to which he would be entitled if he established that he was otherwise entitled to deduct his automobile expenses. Petitioner's amended return shows that he calculated $1,878 as the amount of depreciation on the automobile based on the assumptions that he used it exclusively for business purposes, that he used it for six months in 1975, and that his basis was the entire purchase price of the car. However, petitioner testified at trial that business use of the automobile accounted for only 85 percent of its use, that he only owned*500 the car for a little over two months in 1975, and that he was merely a joint owner of the car and had not paid the full purchase price himself. 9 We find it unnecessary, however, to determine an amount for depreciation, because we conclude that petitioner has not proven that this automobile was used in his trade or business during 1975 and is not, therefore, entitled to any deduction, either for depreciation or other expenses, in connection therewith. Section 162(a); section 167(a). *501 Petitioner claimed on his amended return and at trial that in 1975 the Toyota Land Cruiser was driven 946 miles for business purposes. While the amended return described the automobile use as being for "library research" and "trips to visit informants for book being written," at trial petitioner stated that he was driven in the car by Frances Snow, the co-owner, towards the desert in Arizona for the purpose of doing archeological research on General Patton's tank maneuvers in connection with courses he taught and his professional writing, but they turned back before achieving this objective. Petitioner testified that such journey accounted for the 946 miles of business use of the automobile. 10 The only evidence introduced by petitioner to corroborate his testimony was a page from a log of gas and oil expenditures for a trip to California in 1976. We can see no relevance of this document to the issue before us. 11 In light of petitioner's testimony that he was unable to work in 1975 because of his broken back and the inconsistencies in his various statements as to when he used the automobile and for what purpose, we find petitioner's testimony too vague in regard to the alleged*502 business trip to establish without further corroboration that such trip, or any other business use of the automobile, was made in 1975. Accordingly, we deny the automobile expense deduction claimed by petitioner on his amended return. 12*503 Issue 6. Investment CreditPetitioner also claimed an investment credit of $296.18 for investment in the Toyota Land Cruiser on the assumption that it had a three- to five-year useful life and for investment in the amount of $1,085 in other property having a useful life of seven or more years. Petitioner testified that the amount of $1,085 was composed of two items: a home office bookcase with a basis of $435 and stereo equipment used in connection with his ethnomusicology classes with a basis of $650. The investment credit is allowable for qualified investment in section 38 property, which is defined to include only property having a useful life of 3 years or more with respect to which depreciation is allowable. Section 48(a)(1).Since petitioner has failed to establish that depreciation was allowable with respect to his automobile, i.e., that it was used in his trade or business (supra, pp. 15-16), petitioner has not established that he is entitled to claim an investment credit with respect to the automobile. Similarly, petitioner has not shown that he is entitled to an investment*504 credit for his home office bookcase, because, as we have discussed supra, pp. 8-9, he has not established what, if any, basis he had therein. With regard to the credit claimed for stereo equipment, petitioner testified at trial that he paid $650 in 1975 for such equipment to make tapes to play to his ethnomusicology classes. He introduced into evidence an instruction booklet for a Panasonic compact stereo which he testified described the unit for which he was seeking an investment credit. The record was held open for petitioner to submit evidence of the purchase price paid for this unit and the date of purchase. Petitioner submitted a receipt showing he purchased Pioneer, Dual, and Bose stereo components on February 15, 1975, for $611. This receipt provides no corroboration of the date of purchase and purchase price of the compact unit which petitioner allegedly used for business purposes. Petitioner did not testify or introduce any evidence that he used a component system, such as the one described in this receipt, for business purposes. Since petitioner has the burden of proof in this regard, we must assume that this component system was purchased for personal use and that*505 petitioner may not claim an investment credit in respect of the purchase. We conclude that petitioner has not carried his burden of proving that he is entitled to any investment credit. Rule 142(a), Tax Court Rules of Practice and Procedure.Issue 7. Sick Pay ExclusionSection 105(d), as in effect for the taxable year in question, excludes from gross income certain amounts received by an employee as wages and payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness, but the excluded amounts may not exceed a weekly rate of $100 and amounts attributable to the first 30 calendar days of absence must be excluded. Petitioner broke his back in early 1975 and was absent from work for the remainder of the year. The academic year at the University of Colorado covered 181 days. Petitioner claimed a sick pay exclusion of $4,520 based on an absence from work for a period of 248 workdays. Respondent determined that no more than $3,160 of sick pay could be excluded from income, basing this determination on an absence for*506 a period of 180 workdays. Petitioner argues that he was entitled to an exclusion based on a greater number of days because he worked seven days a week rather than five. It would appear that petitioner has calculated his period of absence as consisting of the academic year of 181 days plus 67 days representing Saturdays and Sundays during the academic year, or a total of 248 days. However, he did not carry through his calculations because he excluded Saturdays and Sundays in calculating the excludable waiting period (subtracting only 22 days from the 30-day waiting period provided in section 105(d)) and in utilizing a five-instead of a seven-day workweek to convert the $100 weekly exclusion into a daily rate. Petitioner cannot have it both ways. If he worked seven days a week, he must use it for all purposes. On this basis, he would be entitled to exclude $14.30 per day for 218 days, or $3,117.40, which is slightly less than the amount allowed by respondent, who calculated his exclusion on the basis of a daily exclusion rate of $20 (100./. 5) and the total number of days absent as 158 (180 - 22). Although respondent's calculation of the sick pay exclusion is based on an absence*507 of 180 days, and we have found as a fact that an academic year at the University of Colorado is 181 days long (see supra, p. 4) we sustain respondent's determination because petitioner has not argued that his injury occurred before he had worked even one day in 1975. 13Issue 8. Failure to Earn Anticipated IncomePetitioner seeks to deduct, as a "loss of commissioned professional writing," $300 which he claims represents an amount he would have earned in 1975 had his back injury not prevented him from writing. 14 The essence of petitioner's claim is that he suffered a loss by failure to realize anticipated income. It is well settled, however, that no deduction is*508 allowable for income anticipated but not earned or for the failure to receive potential profits. Hort v. Commissioner, 313 U.S. 28, 31-33 (1941); Hendricks v. Commissioner, 406 F.2d 269, 272 (5th Cir. 1969), affg. a Memorandum Opinion of this Court; Thompson v. Commissioner, 66 T.C. 1024, 1057-1058 (1976), on appeal (9th Cir. June 15, 1978).Issue*509 9. Attorney's FeePetitioner contends that he is entitled to deduct, as a business expense, a fee paid to an attorney to defend him against a charge of driving while under the influence of alcohol, because a conviction would have resulted in revocation of his driver's license, without which he would have been unable to get to work. While the charge against petitioner might have had an incidental effect on his employment, that possibility is not determinative of the deductibility of petitioner's legal expenses. The deductibility of legal expenses is determined by the "origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer." United States v. Gilmore, 372 U.S. 39, 49 (1963). The charge against petitioner arose out of a personal activity and the nature of the charge of drunken driving was unrelated to petitioner's business as an author or professor. As such, legal expenses incurred in connection with that charge are not deductible. Compare Commissioner v. Tellier, 383 U.S. 687 (1966),*510 with United States v. Gilmore, supra.Furthermore, even if the test set forth in United States v. Gilmore, supra, were satisfied by the facts as alleged by petitioner, we would find that petitioner had failed to establish several of those essential facts. Petitioner bears the burden of proving the amount of the fees paid and the year of payment. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. We did not find his testimony alone sufficiently precise to carry this burden and he introduced no corroborative evidence. Nor did petitioner produce evidence to show that he was using the car in his business when the alleged incident occurred. Moreover, as we have discussed above in connection with petitioner's claim for a deduction for parking fees (see supra, pp. 11-13), he introduced no evidence as to the availability of other modes of transportation to his job; therefore, we cannot determine whether or not an ability to drive was essential for him to get to work. Consequently, *511 we sustain respondent in his disallowance of this deduction. Issue 10. Film Production CostsPetitioner seeks to deduct $1,400.64 expended in 1975 for the production of the master copy of an anthropological film, prints of which petitioner intended to sell or rent to universities and educational groups in years subsequent to the taxable year in question. Respondent contends that the production costs must be capitalized and are not currently deductible. We agree with respondent. Petitioner's film production costs were costs of acquiring an asset with a useful life extending substantially beyond the taxable year in question. Such expenditures are not deductible in full in the year paid. Commissioner v. Idaho Power Co., 418 U.S. 1, 12 (1974); section 263(a); section 461(a); section 1.461-1(a), Income Tax Regs. Such costs may be recoverable out of the proceeds of future dispositions or depreciable. No dispositions of the film, by sale or rental, occurred in 1975. Petiioner introduced no evidence to establish a useful life for the*512 film and is, therefore, not entitled to a depreciation deduction with respect to the film in 1975. Spartanburg Terminal Co. v. Commissioner, 66 T.C. 916 (1976). Issue 11. Premiums on Insurance PoliciesOn his original return, in addition to a deduction for alimony, petitioner claimed a deduction of $164.00 for "medical insurance for ex-spouse" and $175.20 for "courtordered TIAA insurance." Respondent disallowed these deductions for lack of substantiation. On his amended return, petitioner stated that the deduction for "medical insurance for ex-spouse" should have been labeled "courtordered life insurance premiums" and that the correct amount of that deduction was $204.60 rather than $164.00. At the outset, we note that the record made by petitioner on this issue is extremely confusing. Petitioner's brief refers to the existence of five insurance policies, without enumerating them. Petitioner's separation agreement with his first wife, Ruth, refers to four insurance policies: (1) a policy on the life of their minor child to be assigned to that child on the attainment of majority; (2) a "paid-up policy" of life insurance with a face value of $1,500; *513 (3) a Metropolitan health insurance policy with a death benefit of $5,000; and (4) a TIAA term insurance policy upon his life with a decreasing death benefit. Petitioner agreed to name Ruth irrevocably the beneficiary on policies (2), (3), and (4), and Ruth agreed to accept payment under the TIAA policy as trustee for their minor child until the child attained majority. Certain documents incorporated into the record of this case subsequent to trial by order of the Court indicated, for the first time, that petitioner also had a second ex-wife, Joan, who at some time had been the beneficiary of various policies insuring petitioner.However, petitioner did not testify in regard to any policies for Joan's benefit and the only evidence of the existence of such a policy during 1975 is a photocopy of a check dated June 13, 1975, in the amount of $27 payable to Joan Greenway with a notation "medical premiums." Since petitioner stated on his amended return, and again on brief, that he is seeking a deduction for "court-ordered life insurance" premiums and not medical insurance premiums, we conclude that the issue before us does not involve the deduction of premiums paid for Joan's benefit and*514 the record before us is, in any event, devoid of the evidence which would be necessary to support any such deduction. Moreover, we think it clear that no alimony deduction for premiums paid is allowable with respect to policy (1), in which Ruth appears to have no interest, or policy (2), which is described as "paid up." Thus, we infer that the policies relevant to the issue before us are policies (3) and (4) above. Turning to policies (3) and (4), we conclude that petitioner has failed to establish that any premiums paid by him on these policies were deductible as alimony. Insurance premiums on a life insurance policy obtained by a taxpayer are deductible as alimony only where the former spouse has an absolute, rather than a contingent, interest in the policy. Kiesling v. United States, 349 F.2d 110, 112 (3rd Cir. 1965); Weil v. Commissioner, 240 F.2d 584, 587 (2d Cir. 1957), affg. on this issue 22 T.C. 612 (1954); Cosman v. United States, 194 Ct.Cl. 656, 440 F.2d 1017, 1021-1022 (1971). Cf. Brodersen v. Commissioner, 57 T.C. 412 (1971);*515 Ostrov v. Commissioner, 53 T.C. 361 (1969).Even if we assume that petitioner fulfilled his obligations under the separation agreements, naming Ruth the irrevocable beneficiary of policies (3) and (4), the agreement does not provide for the assignment of such policies to her and no evidence was presented to show that such an assignment was made. 15*516 Additionally, policy (4), the TIAA insurance, is described as a term policy with a decreasing death benefit. Premiums on such a policy have been held nondeductible, since the payment at the death of the insured is merely contingent and is, thus, insufficient to confer a present economic benefit on the former spouse. Brodersen v. Commissioner, supra.Moreover, Ruth's interest in this policy, the TIAA insurance, was subject to a further contingency in that she agreed to receive any payments during the child's minority as trustee for the use and benefit of her child and thus could receive no economic benefit from payments made during that period. We hold, therefore, that petitioner has not proven that he paid premiums on any insurance policies which conferred upon his ex-wife a presently ascertainable economic benefit, rather than a merely contingent interest, and that he is not, therefore, entitled to deduct as alimony any insurance premiums. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes1. The petition herein does not contain a claim for overpayment.↩2. From petitioner's 1976 return, which was introduced into evidence as a joint exhibit by the parties, we are able to infer that petitioner determined the amount of $201.40 on the basis of a straight-line depreciation over a 25-year useful life of one-third of the cost of the house, assuming use of the house for approximately five months in 1975.↩3. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the taxable year at issue.↩4. Our calculations indicate that, even if we accepted the cost, useful life, and method of depreciation used by petitioner on the amended return, the correct amount of the depreciation deduction would be $124.↩5. On his original return, petitioner claimed a casualty loss deduction of $140, but on his amended return claimed a deduction of only $40, the amount by which the alleged loss exceeded $100, in accordance with section 165(c)(3). Because of our decision herein, we find it unnecessary to decide whether the circumstances under which the damage occurred constituted a "storm" or "other casualty." See section 165(c)(3)↩.6. See Bugnolo v. Commissioner, T.C. Memo. 1971-141; Treanor v. Commissioner↩, a Memorandum Opinion of this Court dated April 6, 1951.7. We note that we find somewhat contradictory the evidence that petitioner was unable to work in 1975 because of his back injury (see supra, p. 4, and infra↩, pp. 19-21) and his testimony that he drove to work during that year because of his back injury.8. See also Rev. Rul. 75-380, 1975-2 C.B. 59, in which respondent announced that he will apply a "but for" test in determining the deductibility of expenses for the transportation of tools for 1975 and prior years, but will apply the "additional expense" test articulated in Fausner v. Commissioner, 413 U.S. 838↩ (1973), for subsequent years.9. While petitioner testified that, at some unspecified time, he repaid to Frances Snow that part of the purchase price of the car which she had provided, in light of the evidence that the car was registered jointly and that Frances Snow was listed as co-purchaser on the State of Colorado sales tax receipt issued by the car dealer, we found such testimony insufficient to establish that Frances Snow was merely a lender and not a co-owner of the car. The amount of depreciation which would be allowable to petitioner is limited by his basis in the car. Section 1.167(a)-1, Income Tax Regs.↩10. Respondent questions whether the purpose of the alleged expedition to do research on General Patton was related to petitioner's trade or business. We find it unnecessary to deal with this question because of our conclusion that it has not been established that the expedition took place in the taxable year in question. ↩11. There is also some suggestion in the record that petitioner deducted automobile expenses because he used the automobile to transport his tape recorders and stone implements to work. To the extent that this was the basis of petitioner's deduction, it must be disallowed for the reasons given, supra↩, pp. 11-13, in the discussion of his parking fee. 12. Furthermore, to the extent the deduction of the automobile expenses are costs of travel away from home (which the trip of 946 miles would appear to be), their deductibility is subject to the requirement that petitioner substantiate the amount of the expense, the time and place of travel, and its business purpose by adequate records or by sufficient evidence corroborating his own statement. Section 274(d)↩. This petitioner has not done.13. In fact, the record tends to suggest that he worked for several weeks in that year, in which case the exclusion allowed by respondent is at least equal to, if not in excess of, the maximum amount to which petitioner would otherwise be entitled. As we have noted, both parties herein have proceeded on the basis of a daily rate calculation. Cf. Cohen v. Commissioner, 41 T.C. 181↩ (1963).14. On brief, petitioner explained that his loss was occasioned by the cancellation in 1975 of a contract with Simon and Schuster, Inc., for the publication of his book, The American Tradition, because he was unable to meet the contract deadline and that he was, therefore, compelled to accept a less lucrative contract with another publisher. Although the specific circumstances which prevented petitioner from earning anticipated income do not affect our decision, we note in passing that a letter submitted into evidence by petitioner in conjunction with a copy of his book, The American Tradition, shows that his contract with Simon & Schuster, Inc., for the publication of that book was terminated on July 2, 1973, rather than in the taxable year at issue, as petitioner alleges.↩15. No admissible evidence other than petitioner's testimony, was offered to show that petitioner fulfilled his obligation under the agreement by irrevocably naming Ruth the beneficiary of policies (3) and (4). A written statement by petitioner's ex-wife which purportedly stated that he had fulfilled his obligations under the agreement was excluded from evidence as hearsay upon respondent's objection.See Rule 801(a), (b), and (c) and Rule 802, Federal Rules of Evidence.We see no merit in petitioner's argument that, since the separation agreement was incorporated into his divorce decree, he could not fail to comply with it with impunity and that he has, therefore, adequately established that the provisions of the agreement were carried out. There is no evidence in the record showing that the agreement was incorporated into the decree, since petitioner first submitted a copy of the decree as part of his answering brief after the record in the case was closed. Even if we assume, however, that the agreement was so incorporated and that failure to comply with his obligations could subject petitioner to the penalties attendant upon disobeying a court decree, we nevertheless do not find the existence of petitioner's legal obligation to be evidence of its fulfillment. Of the three title sheets of insurance policies submitted into evidence by petitioner, two were for policies bearing the same certificate number and indicated a change in beneficiary from Joan in 1972 to Ruth in 1977. To the extent that these documents have any bearing on the issue before us, we think they tend to undermine petitioner's position that, as of 1975, Ruth had irrevocably been named as beneficiary of policies (3) and (4) in accordance with the provisions of the 1965 agreement.↩